STUART *v.* MATTERN.

1. STATUTE OF FRAUDS—CONTRACT TO CONVEY LAND—AUTHORITY OF AGENT—UNDISCLOSED PRINCIPAL.

A written contract to convey land, naming the purchaser, made by an agent duly authorized in writing, and signed by him in behalf of his principal, is valid under the statute of frauds (§ 9511, 3 Comp. Laws) though the name of the purchaser was not disclosed to the vendor before the contract was made.

2. PRINCIPAL AND AGENT—RATIFICATION—SALE OF LAND.

Circumstances attending the making of a contract for the sale of land by a real estate agent, on request of one of two tenants in common, examined, and *held*, that by writing a letter disclosing knowledge and approval of the contract, and using funds arising from a part payment thereon, the other tenant ratified the sale.

3. ESTOPPEL—TENANT IN COMMON—CONTRACT TO CONVEY LAND—PART PERFORMANCE.

Payment of $1,000 on a purchase price of $2,500, taking possession, and expending $2,000 in improvements, constitute such a part performance of a contract to convey land, made by a tenant in common, as makes it inequitable to permit the other tenant, who had full knowledge of the facts, to repudiate the contract.

Appeal from Chippewa; Steere, J.   Submitted June
22, 1905.   (Docket No. 47.)   Decided November 21, 1905.

Bill by Samuel Stuart and George N. Stuart against
Louise S. Mattern, individually, and as administratrix of
the estate of George E. Swain, deceased, Bertha A. Swain,
and Florence A. Swain to enforce the specific performance
of a land contract.   From a decree for complainants, but
dismissing the bill as to Louise S. Mattern individually,
all parties appeal.   Modified, and decree entered for com-
plainants as prayed.

*John W. Shine*, for complainants.

*Sharpe & Handy*, for defendants.

MONTGOMERY, J.   This suit is brought by complain-
ants to enforce specific performance of a land contract
against the defendant Louise S. Mattern, individually,
and also as administratrix of the estate of George E.
Swain, deceased, and his widow and heir.   Decree was
granted in the trial court in favor of complainants and
against Louise S. Mattern, as administratrix of said estate,
and against the other defendants; but as to Louise S.
Mattern individually the bill was dismissed, and from the
decree dismissing the bill of complaint as to her individ-
ually complainants appeal.   Defendants also appeal from
the decree against her as administratrix of said estate.

Louise S. Mattern and George E. Swain were brother
and sister, and resided in New York City.   They owned,
as tenants in common, the land in question in this suit,
being two vacant adjoining lots on Spruce street, in Sault
Ste. Marie, Mich.   John G. Stradley, of Sault Ste. Marie,
Mich., was agent for George E. Swain and Louise S.
Mattern, in looking after these lots, paying taxes, etc.,
since 1895, and at one time procured a loan on the prop-
erty from Mrs. Price for defendants.   George E. Swain
looked after the property for Mrs. Mattern, and handled
her interest for her.   In the latter part of the year 1902,

Swain wrote Stradley, requesting him to try and make a sale of the lots. Stradley got an offer from Mr. Joseph Ganley of $2,200 for the lots, and wired Swain to that effect. He got no reply, and wrote Swain January 17, 1903. That deal fell through. Stradley finally succeeded in getting complainants to buy the lots at $2,500, and on April 29th Stradley wrote Swain that he had a party who expected his brother here, and thought he would take the lots at $2,500; $1,000 cash, and balance in one year. On May 1st Swain wrote Stradley to make the sale. Upon receipt of the letter from Swain, and on May 7th, Stradley prepared and signed a contract of sale of the lots on behalf of Mr. Swain and Mrs. Mattern to complainants, and complainants paid $1,000 down pending the approval of the contract by Swain, owing to the fact that the terms were changed somewhat. On the same day Stradley wrote Swain, giving him all the details of the terms of sale, and asked him to telegraph acceptance. Swain, on receiving Stradley's letter, went to his sister, Mrs. Mattern, with the letter, and talked over the terms of sale, and Mrs. Mattern read the Stradley letter; and next morning, May 11th, Swain wired Stradley that sale was approved, and complainants then paid Stradley $400, the balance of the first payment, according to contract. Shortly after, complainants desired to pay all of the purchase price and get their deed, and Stradley communicated this fact to Swain. Upon completing the first payment, complainants went into possession, and commenced the erection of a block of stores on the premises. There were taxes due on the property and interest, and the principal on the Price mortgage, to which Stradley was to apply the money received. On May 14th Swain wired Stradley to send him some money (he was facing a crisis), and that his sister agreed. On May 19th Stradley forwarded draft for $200, stating that he would use the payment falling due June 16th to pay taxes, etc., and that the $1,500 mortgage to Swain and his sister could be negotiated; that he would try and get the money before;

that he would send on the deed for himself and sister to sign. Swain died suddenly May 22d without seeing Stradley's letter. The letter was opened and read by Mrs. Swain, and handed to Mrs. Mattern. On the 10th she had discussed with Mr. Swain Stradley's letter giving the terms of the sale, and asking for acceptance by wire. Stradley's letter of the 19th referred to the sale that he made to complainants, and inclosed draft for $200. Mrs. Mattern suggested a reply to this letter, and on the 25th a letter was written to Stradley, signed by Mrs. Swain and by Mrs. Mattern, containing the following:

"Your letter of May 19th, inclosing draft for $200, was received May 21st, too late for Mr. Swain's signature, as he died at 1:30 a. m. May 22d, after being unconscious for several hours. As Mr. Swain died without making a will, I ask you to advise Mrs. Mattern and myself regarding the sale of the property, as we wish it sold as soon as possible, as money is very necessary to us now. We do not feel able to maintain the property, and are most anxious to make this sale. Will you kindly inform us how matters stand regarding interest and taxes. Kindly advise us as soon as possible."

On May 28th Stradley, replying, wrote direct to Mrs. Mattern, giving full details of the sale, and advised as how to proceed owing to the death of Mr. Swain, Mrs. Mattern handed this letter to an attorney for reply, and on the 19th of June he wrote Stradley, suggesting that the simplest way to convey the property to the purchasers would be by taking an assignment of the Price mortgage to some one there, and foreclosing it; to which Stradley replied, saying that to foreclose the mortgage would not be practicable, and stating that complainants were building on the property. Mrs. Mattern's attorney then wrote Stradley, returning the draft, and asking that it be made to Mrs. Mattern, as she was half owner, and so she could get it cashed. Stradley had the draft indorsed to Mrs. Mattern and returned. Mrs. Mattern indorsed the draft and had it cashed. Some further

correspondence was had between Stradley and Mrs. Mattern's attorney as to the best way to proceed to make a conveyance of the property to the purchasers, and finally Mrs. Mattern came on to Sault Ste. Marie. When she arrived there, about August 11, 1903, she talked the matter of the sale over with Stradley, and was anxious to get the sale closed up, give the deeds, and get all the money. She went to the premises to see complainants, and wanted to have the matter closed up, so she could get all the money. At that time complainants had expended about $2,000 on the building they were erecting on the lots. Mrs. Mattern remained there, and was appointed administratrix of the estate of George E. Swain. She went with Arthur F. Stuart, a brother of complainant Samuel Stuart, and father of George N. Stuart, to an attorney's office, to see what would be the quickest and best way to have the matter closed up and give deeds. At the attorney's office the contract was read over to them, and they were advised that proceedings would have to be had, either in the probate court or in the court of chancery, for specific performance of the contract in such cases; and the attorney recommended the court of chancery, and that, while all of the money was not due under the contract, if all the parties were agreeable, it could be determined, and all of the money paid; that she could be joined as a defendant, and the whole matter closed up at the same time; that it would be an amicable suit to perfect title. She agreed to it. Suit was started, and the bill of complaint was drawn on the line of an amicable suit, and payment in full tendered with the bill of complaint. Later on, and in November, for the first time, Mrs. Mattern concluded to repudiate the contract. From the time Mrs. Mattern first talked with complainants at the premises until November, when she objected to the contract, the complainants had laid out on the building about $5,000. During that time she had been to the premises several times, and talked with complainants, but never intimating that she did not regard the contract

binding, or make any protest against it.   On November 30, 1903, Mrs. Mattern filed her answer to the bill of complaint, denying the validity of the contract.   Thereupon the bill of complaint was amended, setting up the letters, draft, etc., signed by Mrs. Mattern, and her actions regarding the contract during the erection of the building.

The case presents two questions: 1. Is the estate of George E. Swain bound by the contract ?   2. Should defendant Louise S. Mattern be required to convey her interest ?

It seems not to be questioned that the contract signed by Stradley in the name of Swain and Mrs. Mattern was sufficient in its terms to make a valid contract to convey the land; but, as respects its validity as against Swain and his estate, the contention seems to be that, as the name of the purchaser was not disclosed to Swain and Mrs. Mattern, the contract is insufficient under the statute of frauds. The case of *Grafton* v. *Cummings*, 99 U. S. 100, is cited to support this contention.   In that case there was no writing which fixed the identity of the party to the contract not signing.   In the present case the purchasers were fully named in the contract signed by Stradley in the name of, and on behalf of, the owners.   This was sufficient, under 3 Comp. Laws, § 9511, which recognizes the validity of contracts for the sale of land if signed by some person thereunto lawfully authorized by the owner in writing, unless we accept the view that the authorization must contain the name of the purchaser.   We do not so understand the requirement.   The authority may, and often does, extend to the making of a contract with any one who may become a customer on terms stated.   In this case the authority to sell on terms first contemplated was given in unmistakable terms, and the slight departure from those terms was ratified by Swain promptly by telegram.   See *White* v. *Breen*, 106 Ala. 159 (32 L. R. A. 127).

The question of ratification of the contract by Mrs.

Mattern is not so clear.  We are disposed, however, to say that there is a connection shown between the letter of Stradley of May 7th and that of Mrs. Mattern of May 25th, and that this latter letter was intended to authorize the sale according to the terms fully stated in the former, and fully known to and understood by Mrs. Mattern.  We are also convinced that there has been such part performance as would make it inequitable to permit Mrs. Mattern to repudiate her agreement at this late day.

The decree will be modified, and a decree entered for specific performance as against Mrs. Mattern in her individual capacity and also as administratrix, as well as against the other defendants.  Complainants will recover costs of both courts.

MCALVAY, BLAIR, OSTRANDER, and HOOKER, JJ., concurred.