Currens v Lauderdale.

GEORGE CURRENS *v.* MRS. Q. T. LAUDERDALE *et al.*

(*Jackson.*    April Term, 1907.)

**ESTOPPEL.** By acquiescence and laches and partition of other parts of tract to assert title to an undivided interest in land, when.

Complainant acquired title to an undivided one-third interest in certain lands after the owner of the other undivided two-thirds thereof had sold and conveyed part thereof by metes and bounds by warranty deed purporting to convey the fee in the whole of such part, to which conveyance complainant made no objections for forty years, though it was registered; and he permitted the grantee, his heirs and assigns to pay taxes on said land and transfer it, and exercise acts of dominion over it, without asserting any title to it himself. More than thirty years afterwards, complainant made a written stipulation with the heirs and other assigns of the seller to partition said land, but it was agreed that the above previously sold land should be deducted, and not included in the partition, which partition was made, and the report thereof was confirmed by a decree of the county court in accordance with the stipulation. Ten years thereafter, and after the lands so allotted to complainant and others were sold and conveyed to innocent purchasers, complainant filed a bill to recover the undivided one-third interest therein and to obtain partition thereof. Upon the foregoing facts, the court holds that .complainant, by his acquiescence and laches was estopped to sue to recover his undivided one-third interest in said land and to obtain partition thereof.

Cases cited and approved: Owens v. Dunn, 85 Tenn., 131; Robertson v. Winchester, 85 Tenn., 188; Ore Co. v. Miller, 41 Conn., 112; Goodwin v. Keney, 49 Conn., 563; Johnson v. Stevens, 7 Cush. (Mass.), 431; Holcomb v. Coryell, 11 N. J. Eq., 548; Arnoid v. Cauble, 49 Tex., 529; Camron v. Thurmonds, 56 Tex., 22; Furrh v. Winston, 66 Tex., 521; Worthington v. Staunton, 16 W. Va., 208.

FROM DYER.

Appeal from the Chancery Court of Dyer County.—
JOHN S. COOPER, Chancellor.

D. B. JOHNSTON and S. GRANGER LATTA, for complain-
ant.

STEELE & STEELE, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the
Court.

Complainant filed this bill on the 9th of September,
1905, to recover of the heirs of E. W. Tipton an un-
divided one-third interest in a tract of land, comprising
two hundred acres, conveyed by Isaac Sampson to E. W.
Tipton on July 15, 1863. The bill also seeks a parti-
tion of said tract of land. The theory of the bill is that
Isaac Sampson and the complainant were tenants in
common of said land, and that Isaac Sampson individu-
ally conveyed it by metes and bounds to E. W. Tipton.
The heirs of E. W. Tipton in their answer set up an
estoppel against complainant, growing out of certain
partition proceedings in the county court of Dyer county
in the year 1895, and defendants by a cross bill ask

118 Tenn—32

that the claim of complainant be removed as a cloud on their title, and that all title to said land be divested out of complainant and vested in defendants. On the hearing the chancellor was of opinion that complainant was estopped to set up his title to an undivided one-third interest in said land, and dismissed complainant's bill. The chancellor sustained the cross bill, divesting title out of complainant and vesting the same in the defendants. Complainant appealed, and assigns as error the action of the chancellor.

It is conceded in the record that complainant has the legal title to the land in question, and the whole controversy is whether he has estopped himself from asserting it. In order to settle the legal question presented it will be necessary to make a more extended statement of the facts: In the year 1851, the State of Tennessee granted to one A. P. Greene two tracts of land, situated in Dyer county; one tract, comprising 5,000 acres, being grant No. 12,425, and the other tract, containing 3,000 acres, being grant No. 12,427. It is conceded that these two grants as a matter of fact only contained 5,352 acres. Subsequently Isaac Sampson acquired an undivided two-thirds interest in said two grants; and at a still later period the complainant, George Currens, became the owner of the remaining undivided one-third interest in said grants. It thus appears that complainant and Isaac Sampson became tenants in common in the whole land embraced in said grants. Before complainant acquired his one-third in-

terest in said grants, Isaac Sampson sold and conveyed by warranty deed several tracts from these grants to various individuals, which deeds purported to convey the fee to the whole tract, while as a matter of law Sampson only owned an undivided two-thirds interest in same. The conveyances so made by Isaac Sampson out of the 3,000-acre grant were: (1) To Doyle, 289 acres; (2) to A. D. Bledsoe, 141 acres; (3) to James Smith, 53 acres; (4) to Bledsoe, 53 acres; (5) to W. B. Sampson, 250 acres; (6) to Parker, 300 acres; (7) to J. G. Bledsoe, 265 acres; (8) to E. W. Tipton, 200 acres, July 15, 1863, which was conveyed by metes and bounds. In the year 1861, two years prior to the conveyance made to Tipton, Isaac Sampson sold to W. B. Sampson and M. D. Pate, trustees for his two daughters, Lou and Sarah, 2,000 acres of land to be laid off from the 5,000-acre tract. It appears that at a prior date Isaac Sampson had conveyed to another daughter, Ann Pate, a tract of 500 acres by metes and bounds out of the 5,000-acre grant. In the year 1889, the daughter Lou, who had intermarried with J. H. Wardlow, joined with her husband and her trustee in conveying her undivided interest in this 2,000 acres to B. A. Sinclair and others. After excluding the prior conveyances made by Isaac Sampson, and allowing his two daughters the 1,000 acres each deeded to them, there remained of both grants only 1,201 acres. Isaac Sampson, it appears, died in Dyer county in June, 1878, intestate, and leaving surviving him three children, W. B. Sampson, Sarah S.,

wife of S. B. Carson, Lou P., wife of J. H. Wardlow, and M. W. Pate, a grandson. W. B. Sampson, the son of Isaac Sampson, died in August, 1894, intestate. It further appears that on the 9th of August, 1895, complainant, Currens, entered into a written agreement with Sarah Carson and her husband, S. B. Carson, Lou P. Wardlow and her husband, J. H. Wardlow, B. A. Sinclair, and M. W. Pate for the purpose of partitioning said two grants. Certain individuals were selected as commissioners to make the partition, and the written agreement directed these commissioners "to first. lay off and set aside to the owners thereof the two 1,000-acre tracts of land in grant No. 12,425, which were deeded by Isaac Sampson in his lifetime—1,000 acres each to his two daughters, Lou P. and Sarah S., which said two tracts of land, of 1,000 acres each, are to be laid off and set aside in strict accordance with the deed made by Isaac Sampson to his two daughters. They will then assign, according to quality and quantity, the remaining portions of the land contained in said two grants, which have not heretofore been sold, to the parties entitled to the same."

It was further stipulated that the report of these commissioners "should become and be made the judgment of the county court." This agreement was signed by the complainant, George Currens, and the other parties whose names have already been stated. Accordingly said commissioners laid off the two 1,000-acre tracts conveyed by Isaac Sampson to his two daughters out of the

Currens v. Lauderdale.

5,000-acre grant, and there was left 711 acres, which were allotted to the complainant. The commissioners then deducted from the 3,000-acre grant certain tracts which Isaac Sampson had conveyed by metes and bounds to various purchasers, and there remained 490 acres, which were assigned to complainant. The commissioners made their report to the December term, 1895, of the county court of Dyer county, and a decree was entered confirming said report. Neither the heirs of E. W. Tipton nor their vendees were made defendants to the partition proceedings, but said tract was deducted from the land partitioned. It is the insistence of defendants that said tract was excluded from the partition proceedings under the terms of the written stipulation, which provided: "They [the commissioners] will then assign, according to quantity and quality, the remaining portions of said land contained in said two grants, which have not heretofore been sold, to the parties entitled to the same."

It is said on behalf of defendants that complainant, although originally a tenant in common with the Tiptons in the 200-acre tract, has estopped himself by the partition proceeding to claim his right of partition. It is also insisted that complainant is bound under the rule of acquiescence and on account of his laches. It is said in the first place that complainant should have made all parties who had purchased any of these lands parties to the partition proceedings, and, having failed to do so, he is estopped to file another bill for partition.

It will be observed from the facts already stated that thirty-two years elapsed from the date of the conveyance by Isaac Sampson of the 200 acres of land in controversy to E. W. Tipton on July 15, 1863, to the decree in the partition proceedings, rendered in December, 1895. It does not appear from the record that complainant during all that time ever interposed an objection to that conveyance, although it was duly recorded and showed on its face that Isaac Sampson had undertaken to convey this tract of land by metes and bounds, when at the time he was only a tenant in common and entitled to an undivided two-thirds interest therein. It further appears that ten years elapsed after the date of the decree in the partition proceedings, during all of which time complainant apparently acquiesced therein, before the present bill was filed. It is shown that E. W. Tipton, the original grantee of this land, died in the year 1864, and that during his life and after his death the heirs paid all the taxes accruing on said lands. It further appears that, after the allotment to complainant of the 711 acres and the other tract of 490 acres under the partition proceedings, complainant sold off this 1,201 acres to innocent purchasers; and it further appears that the parties to whom the 2,000 acres were laid off out of the 5,000-acre grant in said partition also sold off said tracts to innocent purchasers. These facts are mentioned for the purpose of showing the practical difficulty, if not impossibility, of having another partition of the lands embraced in the two grants. Now,

Currens v. Lauderdale.

the first question presented on the record is whether the complainant, in view of this great lapse of time and under the circumstances stated, is not bound by the doctrine of estoppel or acquiescence from setting up any claim to the 200-acre tract of land.

"While it is well settled that one tenant in common cannot convey a specific part of the common property by metes and bounds to the prejudice of his cotenant, it does not necessarily follow that all such conveyances are wholly void. The true doctrine, as deducted from actual decisions, seems to be that such conveyances are absolutely void as against cotenants whose rights are prejudiced thereby and who have not consented to them or ratified them, but that, when confirmed or assented to by the other cotenants, such conveyances are valid as against all parties. The assent of the cotenant in such cases need not necessarily be by deed, but may be inferred from long acquiescence in the grantee's title. In any case it seems that a tenant cannot complain of a conveyance of a specific part of the common estate by a cotenant, where his own rights are not injuriously affected thereby; and a court of equity will respect the rights of the tenants, so far as this can be done consistently with the rights of the other cotenants, and, wherever practicable, will confirm the title of the grantee by allotting to the grantor that portion of the land conveyed." Am. & Eng. Ency. of Law (2d Ed.), vol. 17, p. 684; *Hartford Ore Co.* v. *Miller,* 41 Conn., 112; *Goodwin* v. *Keney,* 49 Conn., 563; *Johnson* v. *Stevens,* 7 *Cush.* (Mass.),

431; *Holcomb* v. *Coryell,* 11 N. J. Eq., 548; *Arnold* v. *Cauble,* 49 Tex., 529; *Camron* v. *Thurmond,* 56 Tex., 22; *Furrh* v. *Winston,* 66 Tex., 521, 1 S. W., 527; *Worthington* v. *Staunton,* 16 W. Va., 208.

Says Mr. Pomeroy, in his work on Equity Jurisprudence (volume 2, section 818) :

"Acquiescence, consisting of mere silence, may also operate as a true estoppel in equity to preclude a party from asserting legal title and rights of property, real or personal, or rights of contract. The requisites of such estoppel have been described. A fraudulent intention to deceive or mislead is not essential. All instances of this class, in equity, rest upon the principle: 'If one maintain silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent.',A most important application includes all cases where an owner of property, A., stands by and knowingly permits another person, B., to deal with the property as though it were his, or as though he were rightfully dealing with it, without interposing any objection, as by expending money upon it, making improvements, erecting buildings, and the like. Of course, it is essential that B. should be acting in ignorance of the real condition of the title, and in the supposition that he was rightful in his own dealing." Daniell's Suits in Chancery (2d Ed.), section 68; *Robertson* v. *Winchester,* 85 Tenn., 188, 1 S. W., 781; *Owens* v. *Dunn,* 85 Tenn., 131, 2 S. W., 29.

Now, as already seen, complainant stood by for over

forty years, and saw E. W. Tipton, his heirs and as-
signees pay taxes on this property, transfer it to pur-
chasers, and exercise acts of dominion over it, without
asserting any title to the property himself. In 1895 he
entered into a written stipulation with the heirs and
assigns of the heirs of Isaac Sampson to partition said
two grants, and in the written stipulation agreed that
the land which had been sold by Isaac Sampson to other
parties should be deducted from the grants and not in-
cluded in the partition.

The present bill was not filed until ten years after the
confirmation of the partition proceedings by the county
court of Dyer county in 1895, and after all the land al-
lotted had been sold to innocent purchasers, and when
another partition of the land would be wholly imprac-
ticable.

We are therefore of opinion there has been an acqui-
escence on the part of complainant in the sale by Isaac
Sampson to E. W. Tipton on July 15, 1863, by the great
lapse of time, and also that said sale was ratified and
confirmed by complainant by the written stipulation
contained in written agreement signed by him, where
the commissioners were directed to assign, "according
to quality and quantity, the remaining portions of the
land contained in said two grants, which have not here-
tofore been sold," etc.

We are of opinion that cross-complainants have ac-
quired a perfect legal title to the land in controversy,
and it results that complainant's bill must be dismissed,
and the decree of the chancellor affirmed, with costs.