BROOM et al. v. PEARSON et al.   (No. 1499.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 8, 1915. Rehearing Denied Nov. 25, 1915.)

1. TRESPASS TO TRY TITLE ⊜⇒38—BURDEN OF PROOF.

Where, in an action of trespass to try title by cotenants against the grantee of their cotenant, plaintiffs connected their title with the agreed common source, the burden was placed on defendant to show that plaintiffs' title had been parted with or lost.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 53; Dec. Dig. ⊜⇒38.]

2. TENANCY IN COMMON ⊜⇒35—SALE BY COTENANT—INTEREST OF GRANTEE.

The purchaser of a specific portion of common property from only one of the cotenants acquires only the undivided interest of his grantor where the sale is without the consent or subsequent acquiescence of the other cotenants.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 27; Dec. Dig. ⊜⇒35.]

3. PARTITION ⊜⇒77 — ACTUAL PARTITION — RIGHTS OF PURCHASER FROM COTENANT.

When such nonconveying cotenants seek partition, the purchaser has an equitable right to have the lands described in his deed set apart to him, where this can be done without injury to the rights of plaintiffs.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 211–223; Dec. Dig. ⊜⇒77.]

4. TENANCY IN COMMON ⊜⇒35—SALE BY COTENANT—DIVISION OF PROPERTY—CONDUCT—INFERENCE.

Where joint owners of real estate so deal with the common property as to give rise to the inference that they have agreed upon a division, the purchaser from only one will be given

the benefit of that inference, and will be protected accordingly.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 27; Dec. Dig. ☞35.]

**5. PARTITION ☞5—PAROL PARTITION—SALE BY COTENANT—CONSENT—ESTOPPEL.**

One joint owner may part with his interest in the common property by simply consenting to a transfer made exclusively by his cotenant and thus become estopped from thereafter disturbing the purchaser, since parol partitions are valid under the laws of Texas.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 13–17; Dec. Dig. ☞5.]

**6. TRESPASS TO TRY TITLE ☞41—EVIDENCE—SALE BY COTENANT.**

In an action of trespass to try title by cotenants against grantees of their cotenant who conveyed without their consent, evidence *held* insufficient to show a subsequent acquiescence by plaintiffs in the sale so as to estop them from asserting title as against such grantees.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. ☞41.]

**7. TENANCY IN COMMON ☞35—SALE BY COTENANT—SUBROGATION TO RIGHTS OF GRANTOR.**

Where cotenants owned several parcels of land, and one tenant sold a specific piece without the consent of, or an accounting to, the others, and such others subsequently sold other common parcels in the same manner, the grantee of the first selling tenant was not entitled to be subrogated to the rights of his grantor in such other parcels so as to hold his purchase as against the other tenants, since he bought at his peril, and must be satisfied with the title acquired.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 27; Dec. Dig. ☞35.]

**8. JUDGMENT ☞248—SCOPE OF RELIEF—LIMITATION BY PLEADING.**

In an action to try title by cotenants against the purchaser under an unauthorized sale of common land by their cotenant, plaintiffs are restricted to relief as to their undivided interest in the land described in their petition only, and not as to other parcels concerning which the petition was silent.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 434; Dec. Dig. ☞248.]

Appeal from District Court, Rusk County; R. T. Brown, Special Judge.

Action by P. B. Broom and others against John Pearson and others in trespass to try title. From judgment for defendants, plaintiffs appeal. Reversed and remanded.

J. H. Turner and T. J. Arnold, both of Henderson, for appellants. John R. Arnold and J. W. McDavid, both of Henderson, for appellees.

HODGES, J. This is an action of trespass to try title, instituted by the appellants against the appellees to recover 200 acres of land described as a part of the west half of the Francis Hamilton survey, situated in Rusk county. The appellees answered by a plea of not guilty, general denial, and the three, five, and ten year statutes of limitation. The suit was originally instituted in 1902. The first trial resulted in a judgment in favor of the defendants in the suit on their plea of limitation. An appeal was prosecuted from that judgment, which finally reached the Supreme Court, where the judgment was affirmed as to one of the original plaintiffs, who is not now a party to this appeal, and reversed and remanded as to the other plaintiffs. The grounds upon which that reversal was predicated are fully set forth in Broom v. Pearson, 98 Tex. 469, 85 S. W. 790, 86 S. W. 733. The Supreme Court remanded the case for a trial upon its merits. The second trial, from which this appeal is taken, was upon special issues, and also resulted in a judgment in favor of the defendants below.

The facts found by the jury, and other facts about which there is little or no controversy, are substantially as follows: The land involved is a part of a tract of 600 acres originally granted by the state to Francis Hamilton, who died in 1838, leaving a widow, Caroline Hamilton, and two children, Mary L. and J. D. Hamilton. Some time after the death of Hamilton his widow married W. C. Davis, by whom she had four children, James, who died unmarried in 1863, Permelia, now Mrs. Broom, Elizabeth, who died in 1898, leaving children, Thomas, who is still living, but whose interest was disposed of in the other appeal. Caroline Hamilton-Davis died in 1852. In 1853 her son by the former marriage, J. D. Hamilton, died without having been married. The Hamilton survey seems to be treated as having been the separate property of Francis Hamilton, which, upon the death of both parents, vested exclusively in the two Hamilton children. It is conceded that after the death of J. D. Hamilton his interest passed by inheritance, one-third to his sister Mary L., and one-sixth to each of his half-sisters and half-brothers. The plaintiffs in this suit are Permelia Broom, formerly Permelia Davis, and the children of Elizabeth Compton, formerly Elizabeth Davis. During the minority of Mary L. Hamilton W. C. Davis, her stepfather, was appointed her guardian, and he in 1855, under an order of the probate court, sold the west half of the Hamilton tract, which includes the land sued for. In that proceeding the land was treated as belonging exclusively to Mary L. Hamilton, and she received and appropriated the entire proceeds of the sale. J. H. Cameron, under whom the appellee Pearson claims, became the purchaser, and paid a consideration of $600. The jury found that Cameron bought without actual notice of any rights of ownership in the appellants; that he and those who claim under him purchased in good faith, and from time to time have made valuable improvements upon the property, and have been using and claiming it adversely for more than 40 years. In 1858, and after her marriage with one Hudson, Mary L. sold the remainder of the 600-acre tract for $1,000. About the same time she also sold 680 acres

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

located by virtue of a certificate granted to her father. During her lifetime Caroline Hamilton-Davis owned a tract of 300 acres of the Smith survey, which she and her second husband, W. C. Davis, occupied as a homestead till the time of her death. In addition to this she owned in her separate right a half interest in 1,280 acres of land situated in Cooke county. She died leaving a will which bequeathed the 300 acres of land above referred to, and some personal property, to her "husband, W. C. Davis, and the heirs of her body." This will, however, was never probated, but was recorded as a deed in the office of the county clerk of Rusk county, and seems to have been recognized by the parties as a valid disposition of the property. W. C. Davis survived his wife, married a second time, and became the father of another set of children. He died in 1900. In 1870 the three surviving Davis children conveyed the 300-acre homestead to their father, W. C. Davis, in consideration of a cash payment of $400, and with the understanding that at his death he would will the property back to them. Davis occupied the premises and appropriated the rents and benefits during his lifetime, and at his death left a will devising the property to the children of his first marriage. At the time of the transfer made by the Davis children to their father they did not know that they were entitled to any interest in the 600-acre tract which had been sold by their half-sister, Mary L. Hamilton; and Mary L. Hamilton, who was then Mary L. Hudson, had never claimed any interest in the 300-acre homestead. Mary L., after a second marriage to one Hunter, died in 1899, leaving several children. Some time after her death those children instituted a suit against the appellants, or, rather, the Davis children, for an interest in the 300-acre tract. That suit was settled by an agreed judgment in favor of the defendants, the Davis children. The evidence further shows that in 1869 the Davis children conveyed whatever interest they inherited from their mother in the Cooke county lands; that Mary L. Hamilton received of property belonging to appellants out of the estate of J. D. Hamilton 90 acres of land, a portion of the 600-acre tract, which is valued at $240.

Upon these facts the court filed the following conclusions as the basis of a judgment for the appellees:

"(1) That Mary L. Hamilton received the benefit and disposed of the entire interest owned by her full brother, J. D. Hamilton, in the 600 acres known as the Francis Hamilton survey, and that plaintiffs herein, Mrs. Permelia Broom and the heirs of Mrs. Compton, as half-sisters of said J. D. Hamilton, own an undivided interest in said land by inheritance.

"(2) That the plaintiffs in this suit have therefore received, appropriated, and converted to their own use the entire undivided interest of Mary L. Hamilton owned by her in the 300-acre tract of land known as the Caroline Hamilton-Davis tract.

"(3) That the interest received by plaintiffs in the Caroline Davis 300-acre tract, in which

Mary L. Hamilton had an undivided interest and which interest was appropriated by plaintiffs, offset and is equal to the undivided interest which the plaintiffs have in the 600-acre Francis Hamilton survey, which said plaintiffs inherited from their half-brother, J. D. Hamilton, and which was disposed of and appropriated by their half-sister, Mary L. Hamilton.

"It is therefore ordered that judgment be rendered for the defendants herein."

[1] When the appellants connected themselves with Francis Hamilton, the agreed common source, they thereby established a prima facie right to recover in this suit to the extent of the interest shown. The burden then rested upon the appellees to show that this title had been parted with, or in some manner lost, before they were entitled to a judgment. The legal conclusion of the trial court is that by their sale of the 300-acre homestead tract, in which Mary L. Hamilton as a joint owner had an interest equal in value to the interest of the appellants in the Hamilton tract, the appellants were now estopped from claiming any interest in the Hamilton tract which had theretofore been conveyed by Mary L. Hamilton. When J. H. Cameron, under whom the appellee Pearson claims, purchased the west half of the Hamilton 600 acres, Mary L. Hamilton and the Davis children were tenants in common of about 2,220 acres of land, divided into four different tracts as follows: 600 acres in Rusk county of the Francis Hamilton survey; 680 acres in Cooke county located by virtue of a certificate issued to Francis Hamilton; 300 acres in Rusk county of the Smith survey, the separate property of their mother, Caroline Hamilton; and 640 acres of the Lusk survey in Cooke county, also the separate property of their mother. The evidence shows that Mary L. Hamilton sold the first two tracts mentioned, aggregating 1,280 acres, and received as the consideration therefor $2,600; that she also sold her interest in the 640 acres in Cooke county inherited from her mother. The most that can be claimed is that the Davis children appropriated her interest in the 300-acre homestead tract in Rusk county. Without attempting to state the interests of the respective owners in these different tracts with mathematical accuracy, it is sufficient to say that the evidence shows that at least 12 years before the sale of the 300 acres by the Davis children Mary L. Hamilton had disposed of property belonging to them which greatly exceeded in value her interest in this homestead tract. If the appellants can, in a suit of this character, be called upon to account for what they had sold of the common property belonging to Mary L. Hamilton, and have the strength of their title tested by the amount they had appropriated from the proceeds of such sale, it is difficult to see why all the conveyances of Mary L. Hamilton and all of the money received by her were not also taken into consideration by the court in passing upon the equities of the parties.

180 S.W.—57

[2-5] But we are of the opinion that the trial court erred in applying that rule to the facts of this case. A purchaser of a specific portion of the common property from only one of the joint owners acquires no interest in any of the property except that which is embraced in his deed; and, when his purchase is without the consent, or subsequent acquiescence, of the other co-owners, he takes only the undivided interest of his grantor. This doctrine is too well established to call for the citation of precedents. When the nonconveying cotenant seeks the partition, the purchaser has an equitable right to have the lands described in his deed set apart to him, provided this can be done without injury to the rights of the other cotenant. Arnold v. Cauble, 49 Tex. 527; Wilson v. Helms, 59 Tex. 680; Gray v. Cockrell, 20 Tex. Civ. App. 324, 49 S. W. 247. This is as far as the courts have ever gone, so far as we have been able to ascertain, where the facts do not show a concurrence by other cotenants in the conveyance. It is true that, when the joint owners so deal with the common property as to give rise to the inference that they have agreed upon a division, a purchaser from only one will be given the benefit of that inference and protected accordingly. Since parol partitions are valid under the laws of this state, one joint owner may part with his interest in the common property by merely consenting to a transfer made exclusively by his cotenant, and thus become estopped from thereafter disturbing the purchaser.

[6] Whether or not such consent has been given is a question of fact to be determined from the evidence. In the case before us the land in controversy was conveyed by the guardian of Mary L. Hamilton during the minority of all the joint owners. No consent or acquiescence at that time can be inferred; neither was there anything done at the time of that sale that can be relied upon to estop the Davis children from thereafter asserting their title to an interest in the land then conveyed. If they are to be estopped or held as having consented to the conveyance by the guardian of Mary L. Hamilton, it must be on account of their subsequent dealings with property in which Mary L. had an interest—the 300-acre tract. The evidence shows that they were not aware of their ownership of an interest in the land conveyed to Cameron till a short time before the bringing of this suit, and about 30 years after their sale of the 300-acre homestead to their father. There is no basis in such evidence for the inference that the Davis children consented to the sale of their interest in the Hamilton tract, or treated that sale as a virtual partition in which they acquiesced. The evidence further shows that the appellants never conceded that Mary L. Hamilton owned any interest in the homestead tract sold by them. Their contention was that their mother had disposed of it by her will, and that they had the exclusive right to sell it. It further appears that Mary L. Hamilton never asserted any claim in that tract during her lifetime, but that her children sued to recover an interest after her death, and were defeated. Upon what ground they lost does not appear.

[7] The purchaser from Mary L. Hamilton cannot claim subrogation to any rights she might have held regarding other and different tracts of land. Let us suppose that after the sale of the Hamilton tract to Cameron the Davis children, while still holding and claiming all of the 300 acres, had brought suit against the purchaser for their interest. Could the latter defend by saying that the Davis children held other lands owned by his grantor, and compel them to resort to those lands for satisfaction? We know of no instance where the courts have gone that far in protecting the purchaser of specific portions from a tenant in common. The most such a purchaser could claim would be to have the land purchased set apart to him in the division sought, provided that could be done without injury to the Davis children. The purchaser bought at his peril, and must be satisfied with the title he acquired at the time. He did not become invested with any equities that would authorize him to compel the partition of other lands or the adjustment of other equities between the cotenants in order that he might hold his purchase. If in the case supposed the purchaser from Mary L. Hamilton would have no legal right to force the Davis children to resort to other lands owned in common for satisfaction, he certainly cannot compel them in this instance to account for the proceeds of a sale of those other lands. Neither can he rely for an estoppel upon the claim which they asserted to other lands, to which the title of Mary L. Hamilton was disputed. Their sale of other common property can be used by him only for the purpose of showing acquiescence in his purchase, or as evidence of a parol partition. If it is not sufficient for these purposes, it constitutes no defense.

[8] According to our view, this case was tried and disposed of upon the wrong theory. Under the evidence as it is here presented, the appellants are clearly entitled to recover an undivided interest in the land sued for, measured by the extent of their inheritance. Why they never embraced in this suit all of the Hamilton 600-acre tract is not shown. Their recovery, however, must be limited to their undivided interest in the land described in their petition. They cannot recover more as compensation for land which they may lose in that portion of the tract not embraced in their petition. In the partition which may follow the appellee Pearson is entitled to have that portion of the land sued for upon which his improvements are situated set apart to him, if this can be done without injury to the rights of the appellants. He, of course, is also enti-

tled to the benefit of all the interests which the appellants did not assert.

The judgment is therefore reversed, and the cause remanded, in order that the land may be partitioned, and that the appellee Pearson may have such judgment as he is entitled to against his warrantor, and other issues of fact determined.