TEXAS & PACIFIC COAL & OIL CO. et al. v. KIRTLEY et al. (No. 226.)

(Court of Civil Appeals of Texas. Eastland, Oct. 8, 1926. Rehearing Denied Dec. 9, 1926.)

1. Frauds, statute of ⬉99—Written royalty division orders ratifying oil and gas leases held sufficient to avoid condemnation of statute.

Written royalty division orders evidencing ratification of oil and gas leases by grantees of interest in minerals *held* sufficient to avoid condemnation of statute.

2. Tenancy in common ⬉49—Oil and gas leases and lessees' title to share of oil through one tenant in common held ratified by mineral grantees' royalty division orders by other tenants in common.

Royalty division orders, executed by grantees of interest in minerals, *held* to ratify and confirm oil and gas leases executed by grantor and lessees' title to seven-eighths of oil.

3. Tenancy in common ⬉22 — Tenant taking out oil or gas must pay cotenants usual royalties for such minerals in place or value of their proportion at mouth of well.

A tenant in common may occupy the whole joint property, but must account to cotenants for value of their proportionate parts of oil and gas taken out by him by paying usual royalties for oil and gas in place in vicinity, if taking was with their knowledge and consent, or value of their proportion at mouth of well, if taking was contrary to their rights.

4. Tenancy in common ⬉39—Tenants may ratify or acquiesce in each other's acts with full knowledge of facts.

Tenants in common may ratify or acquiesce in each other's acts with full knowledge of material facts.

5. Tenancy in common ⬉49—Tenants ratifying cotenants' lease are bound thereby as if parties.

Tenants in common ratifying lease executed by cotenants are bound thereby as though they had joined in execution thereof.

6. Estoppel ⬉58—Prejudice is necessary to "estoppel," but "ratification" requires no change of position or prejudice.

Prejudice is necessary element of "estoppel," but "ratification" requires no change of position or prejudice.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel; Ratification.]

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Tenancy in common ⊱⟶49—Lessors' cotenants could take shares of oil produced by lessees, less shares of expenses, or ratify lease and take shares of royalty.**

When lessees in oil and gas lease executed by two tenants in common drilled productive well, lessors' cotenants could take their share of oil, less same share of expenses of drilling and operating well, or ratify lease and take their proportion of royalty, thereby casting on lessees the burden of paying all expenses.

**8. Tenancy in common ⊱⟶49—Tenants accepting share of royalties, and agreeing that they claimed as royalty owners, under cotenants' oil lease, were bound thereby.**

By accepting their proportionate share of royalties provided for in oil and gas lease and agreeing that they claimed as royalty owners thereunder, lessors' cotenants were bound by lease.

On Motion for Rehearing.

**9. Tenancy in common ⊱⟶43—Tenants ratifying cotenant's conveyance of whole property cannot deny validity thereof.**

Tenants in common, ratifying or acquiescing in cotenant's conveyance of whole property, are estopped to deny validity thereof.

**10. Tenancy in common ⊱⟶39—Ratification applies to tenant's act in dealing with common property without cotenants' consent.**

Ratification applies to act of one person in dealing with another's property without latter's previous consent and to act of tenant in dealing with common property without his cotenants' consent, as well as to act of one purporting to act as agent for another without his authority.

**11. Tenancy in common ⊱⟶55(6)—Royalty division orders held evidence of tenants' ratification of cotenants' oil and gas lease, though not conveyances.**

Royalty division orders *held* evidence of ratification of and acquiescence in, oil and gas lease, by lessors' cotenants, and undisputed evidence thereof, where unexplained, though they were not conveyances.

Appeal from District Court, Stephens County; O. O. Homlin, Judge.

Action by B. L. Kirtley and others against the Texas & Pacific Coal & Oil Company and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

John Hancock, of Fort Worth, W. L. Dean, of Tulsa, Okl., and Clarence Wightman, of Fort Worth, for appellants.

Taylor, Muse & Taylor and J. T. Montgomery, all of Wichita Falls, for appellees.

PANNILL, C. J. On August 18, 1916, S. R. Hill and wife executed to the Texas & Pacific Coal & Oil Company an oil and gas lease. This lease seems destined to be the subject of litigation as it was before the Supreme Court in the case of Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566, and is copied in the opinion

in that case, and is now before this court in a different controversy. After the execution of this lease, said Hill and wife executed to appellees a deed conveying to them an undivided one-fourth interest in all the oil, gas, and other minerals in and under 139 acres of land described in the lease referred to. This conveyance recited that the same was made subject to the oil and gas lease mentioned, but conveyed no part of the rentals which might accrue under said lease thereafter. After the conveyance the coal company and the appellee Mid-Kansas Oil & Gas Company, assignee of one-half interest, deposited in the bank named in said lease the rentals of one dollar per acre provided for. Hill refused to accept the rents and directed the bank to return the money to appellees. Up to this time there had been no development by either the appellants Mid-Kansas Oil & Gas Company, or the Texas & Pacific Coal & Oil Company, upon the premises for oil and gas. After the refusal of the rentals by Hill, he had a conversation with the general attorney of the appellant Texas & Pacific Coal & Oil Company, in which said attorney agreed that the lease had been forfeited and that it would be necessary for the company to procure a new lease from Hill. This concession appears to have been based upon the fact that the lease was without a definite term, and therefore under the decision of the Supreme Court in National Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979 (which was the ruling case at the time) could not be kept alive by the tender of rentals unless such rentals were accepted by the lessee. After considerable negotiations, Hill and wife for a valuable consideration of $33,000, to them paid, executed to the Texas & Pacific Coal & Oil Company on the 18th day of August, 1919, a lease on the entire premises covered by the first lease for a period of three years and providing that the lessee would begin within 70 days from the date thereof a well for oil and gas and prosecute the same with reasonable diligence to completion, and that if such well was not begun that lessees shall pay the lessors the sum of $25 per day for the time of such delay. In other respects the lease does not differ in legal effect from the one first herein referred to.

Appellees were not parties to this lease and did not join in the execution thereof, and were not asked to do so by the lessees; but it appears from the record that Hill had advised appellees of his negotiations with the appellant looking to the execution of a new lease, and the appellees informed said Hill they would not join therein, and this was communicated by Hill to the attorney for the Texas & Pacific Coal & Oil Company. At the time the second lease was executed, it is shown that the Texas & Pacific Coal & Oil Company had both constructive and actual

knowledge of the royalty deed above mentioned.

In November, 1916, the appellant began the drilling of a well on the premises conveyed by appellees, which was completed at a cost of about $66,000, and proved to be unproductive and was abandoned. Appellant then drilled well No. 2 on said premises, completed the same in June, 1920, at a cost of about $71,000. This well was a producer of large quantities of oil. Another well was then drilled on these same premises, which also produced oil and gas.

[1] When the first producing well was completed in 1920, and the oil was run into pipe lines, the appellees executed to the appellant Texas & Pacific Coal & Oil Company a division order dated July 16, 1920, in which it was stipulated that the appellees held an oil and gas lease recorded in Volume 52, p. 304, Deed Records of Stephens County, Tex., conveying said premises, and that said appellees only owned one-eighth of one-eighth royalty in the oil produced from said lands, and that appellant Texas & Pacific Coal & Oil Company should give credit from the proceeds of the sale of the oil received from said lands in accordance therewith. Appellee Kirtley on July 14, 1921, executed another division order to the Prairie Oil & Gas Company, wherein it was stated, among other things, that the royalty should be paid to the following persons in the following proportions: S. R. Hill and Mania Hill, ⁹⁄₆₄; B. L. Kirtley, ¹⁄₆₄; C. T. Hill, ¹⁄₆₄. And on the same day appellee Hill executed a similar division order to the Prairie Oil & Gas Company. Both appellees Kirtley and Hill, on October 12, 1923, executed a division order to the Mid-Kansas Oil & Gas Company, wherein it was agreed that the royalty and working interest in the oil produced from said lands was owned and ought to be paid as follows: S. R. and Mania Hill, ⁹⁄₆₄ royalty interest; B. L. Kirtley, ¹⁄₆₄ royalty interest; T. C. Hill, ¹⁄₆₄ royalty interest; Texas & Pacific Coal & Oil Company, one-half working interest; Mid-Kansas Oil & Gas Company, one-half working interest Each of these division orders described the premises and stated the ownership as set out to be the interest of the appellees. Under these division orders the oil was run into the pipe line and by the pipe line paid to the respective parties, in the proportion as stated in said division order last herein set out and accepted by appellees Kirtley and Hill. The checks from the pipe line company to the appellees Kirtley and Hill, in payment for the royalty interest as agreed to by them, stated that the same was in payment of their royalty interest in the S. R. Hill lease. It was further shown that on several occasions the checks from the Prairie Pipe Line Company were not promptly received, and, when this was the case, that the appellee failing to receive it would write to them advising that he had not received his royalty check for a particular month. The payments to appellees was for part of the same oil for which judgment was rendered. The acts evidencing ratification were in writing and sufficient to avoid the condemnation of the statute of frauds. Tiffany on Real Property, vol. 1, p. 682.

[2] Among other defenses urged by appellant was that of ratification on the part of appellees of the lease made by the Hills. On the trial before the court, the trial court concluded upon the facts as stated that on account of no work having been begun by the appellant prior to August 8, 1919, the first lease had been abandoned. That appellees were not precluded by the second lease because they did not join in the execution of the same, and having never executed a conveyance of their title that they were not estopped from claiming their interest in the minerals, because there was no evidence of any injury to appellant, or that appellant had changed its position for the worse on account of the execution of the division order above referred to, and gave judgment against appellant in favor of appellees, for the sum of $22,-053, which was one-fourth the value of all the oil produced from said land within two years prior to the filing of plaintiff's petition, less the amount of royalty paid appellees on the same oil, and less one-fourth of the cost of producing said oil within that period; and further awarded appellees a recovery of an undivided one-fourth interest in the minerals in the premises covered by their said conveyance.

A number of interesting questions are discussed in the very elaborate and learned briefs, which have been filed by both parties, but it is not found necessary to discuss but the one question of ratification hereinabove referred to.

Distinguished counsel for appellees place great stress and much reliance upon the decisions of the Supreme Court in Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Robinson v. Jacobs, 113 Tex. 231, 254 S. W. 309; Caruthers v. Leonard, 254 S. W. 779; Thomason v. Hamm, 113 Tex. 239, 254 S. W. 316. But as viewed in this court it does not appear that the decisions of the Supreme Court noted are decisive of this controversy. Appellees insistence is that inasmuch as said cases hold that a cessation of operations terminate an oil and gas lease, and inasmuch as it is further held by the Supreme Court in Waggoner Estate v. Sigler Oil Co., 284 S. W. 922, that a failure to reasonably prosecute the essential obligation of an oil and gas lease with diligence will terminate the title entirely, and the court having found that there was no operations of any kind on said lease prior to November, 1919, the first lease executed by Hill and wife must be held to have terminated, and thereupon Hill and wife and appellees became ten-

ants in common of the minerals, and that Hill and wife having the right to lease to appellants and appellants having procured no conveyance from appellees, the appellees are entitled to recover their one-fourth of the minerals less one-fourth of the amount spent for development during the period for which a recovery was awarded them, and the court having found that there is no estoppel in the case, the judgment should be affirmed.

It is not perceived how the decisions of the Supreme Court referred to can avoid the effects of appellees' acts, which undisputably show a ratification on the part of appellees of both leases executed by the Hills. In none of the cases cited does the Supreme Court say that the law will force down the throat of an unwilling lessor a termination of a lease when such lessor is willing to waive the default which gives him the right to terminate. On the contrary, the Supreme Court, in Benavides v. Hunt, 79 Tex. 383, 15 S. W. 396, say:

"It is universally held that a grantor entitled to re-entry or forfeit an estate on breach of condition, who does not exercise this right when facts within his knowledge occur that would entitle him to do so, has waived his right or is estopped from exercising it, in all cases in which, after breach of condition, he permits the grantee, without objection, to prosecute the enterprise, and expend large sums of money in so doing, which must be lost to the grantee if a forfeiture be subsequently allowed. If a grantor, so situated, on breach of condition, desires to terminate an estate, good faith requires him to act promptly, and on failure to do so, he should not be permitted to reap the benefit of money subsequently expended or labor bestowed, when by his failure to assert his right he induced a grantee to believe that he would not, and to continue the expenditure of money."

[3] The division orders, above set forth, in unmistakable terms ratify and confirm the title of appellants to seven-eighths of the oil, and as to appellee Kirtley expressly ratifies and confirms the first lease. If the first lease was terminated, the Hills and appellees would be tenants in common as to the minerals under said land. The law is that a tenant in common has the right to occupy the whole joint property, but if he takes out oil or gas he must 'account to the cotenant for the value of their proportionate part of the oil and gas upon one of two basis: If his taking of the oil and gas be with the knowledge and consent of his cotenants, he must respond to that by paying the usual and customary royalties for oil and gas in place in the vicinity of the premises; but if the taking of the oil and gas is contrary to their rights, he must account to them by paying them the value of their proportion of the oil and gas at the mouth of the well, for he is regarded as a trespasser. Thornton's Law of Oil & Gas, vol. 1 (4th Ed.) & 313a; Mills v. Willingham, Law of Oil & Gas, page 270.

[4] In Burnham v. Hardy Oil Co. (Tex. Civ. App.) 147 S. W. 334, it is held that a tenant in common has a right to lease the premises for oil and gas, and that his lessee may explore for oil and produce the same, but must account to those cotenants who do not join in the lease for their share of the profits. The rule stated but applies to the law of mines and minerals the rule applicable to tenancy in common generally, and that is, that tenants in common may ratify the acts of each other or acquiesce therein, and such ratification or acquiescence with full knowledge of material facts is effective. Cook v. I. & G. N. Ry. Co., 3 Tex. Civ. App. 125, 22 S. W. 1012; Broom v. Pearson (Tex. Civ. App.) 180 S. W. 895; Werner v. Mayfield (Tex. Civ. App.) 248 S. W. 766; Stuart v. Mattern, 141 Mich. 686, 105 N. W. 35; Pellow v. Artic Mining Co., 164 Mich. 87, 128 N. W. 918, 47 L. R. A. (N. S.) 573, Ann. Cas. 1912B, 827.; Currens v. Lauderdale, 118 Tenn. 496, 101 S. W. 431; 7 R. C. L. Sec's 72, 75, 77, pp. 877, 879 and 882. 38 Cyc. title Tenancy in Common, pp. 106, 111.

[5] Applying these principles to the facts above recited, it cannot be gainsaid that appellees have so far as humanly possible ratified and confirmed the act of their tenant in common in leasing the land for oil and gas, and the act of lessees, appellants herein, in producing the oil under such instrument. Having thus ratified the lease executed by Hill and wife, appellees are so much bound thereby as though they had joined in the execution thereof.

[6] The learned trial court held that appellees were not estopped because there was no change of position on the part of appellants and for lack of prejudice. One of these elements is essential to estoppel, but not to ratification. Ratification and estoppel are very often closely associated, and many times the terms are used interchangeably, although there is a clear line of demarcation between the two, in that prejudice is a necessary element of estoppel, while ratification requires no change or condition or prejudice. 4 Fletcher, Cyc. of Corporations, 3378; 10 Cyc. 1084; Steffens v. Nelson, 94 Minn. 365, 102 N. W. 871; 33 Cyc. 1528.

[7] When appellants drilled the first productive well on said premises, appellees had, as to the oil produced therefrom, open to them two courses; one was to take one-fourth of the oil less one-fourth of the expenses of drilling said productive well and operating the same, or to ratify the lease executed by the Hills and take their proportion of the royalty and cast upon appellants the burden of paying all the expenses. Title Cotenancy, 7 R. C. L. § 75, p. 379; Liles v. Producers' Oil Co., 155 La. 385, 99 So. 339; Sommers v. Bennett, 68 W. Va. 157, 69 S. E. 690; Patterson v. Clem, 79 W. Va. 666, 91 S. E. 654.

[8] They elected to take the latter course and must be held to be bound by that election. They were chargeable with notice of

appellants' title. The second lease, as did the first, conveyed the entire premises of Hill and wife, consisting of 165 acres, which included the 139 acres in which appellee held a one-fourth interest in the minerals. By accepting their proportionate part of the royalties provided for in said lease, and by the execution of the written instruments agreeing that they claimed as royalty owners under said lease, appellees made themselves in effect parties thereto and thereby bound themselves, and as they bound themselves so must they stand bound.

Wherefore, the judgment of the trial court is hereby reversed and here rendered that the appellees, B. L. Kirtley and C. T. Hill, take nothing, and that judgment be here rendered in favor of appellants, with costs both in this court and the court below, and it is so ordered.

### On Motion for Rehearing.

Due to the earnest insistence of appellees in their able motion for rehearing, we have again reviewed the questions passed upon in the original opinion, and because it appears from said motion that we perhaps have not made the exact holding in this case indisputably clear, we are constrained to make the following additional observations:

[9] Appellees insist that we have in effect constructed a new method of passing title to real estate heretofore unknown to the law. Such was not the intention of the decision, and if it has that effect, it, of course, would be clearly erroneous; but if we have not misunderstood the law relating to tenancy in common, it is the rule that where one tenant in common conveys the whole of the property that other tenants in common who ratify or acquiesce are estopped to deny the validity of the conveyance so ratified. In 38 Cyc. title Tenancy in Common, p. 106, the rule is stated:

"Tenants in Common, being owners of several interests, may ratify the acts of each other and acquiesce therein; and generally such ratification or acquiescence with full knowledge of material facts is effective; and after such ratification or estoppel, or after such ratification or acquiescence the ratifying parties and their grantees are estopped from denying the effect thereof."

As supporting this text a large number of cases from different jurisdictions are cited. Most of them relate to the ratification by one tenant in common of the deed of his cotenant conveying a specific parcel of the common property and holding that where such a deed is ratified by a tenant in common he is bound thereby. On page 111 of the same volume of Cyc. as cited last above, there is a further statement:

"An unauthorized sale or conveyance of the whole property by one tenant in common may be ratified by the others. The nonconsenting tenant may be estopped from denying the passage of title to the vendee if he does any act to ratify or confirm the sale."

In Tiffany, on Real Property, vol. 1, p. 682, it is said:

"A conveyance by a cotenant of a specific portion of the land may, it has been frequently stated, be validated by a ratification thereof by the other cotenants. In so far as this means that in States in which a conveyance by a cotenant of his undivided interest in a specific tract of land is ordinarily invalid as against the other cotenants, it is valid even as against them in case they acquiesce therein, it appears to be a reasonable qualification of the doctrine."

To the same effect is the rule as stated in 7 R. C. L. §§ 72, 75, and 77, pp. 877, 879, and 882.

In section 75, it is there said:

"A joint tenant or tenants in common cannot sell the whole common property without the authority of his cotenants; for he has no implied authority to dispose of his cotenant's interest in the common property and any attempt on his part to do so is ineffectual. In case of such a sale a nonassenting tenant has two courses open to him. He may treat the attempted sale of his interest as annulled, and if the grantee refuses to admit him to possession of the premises may bring ejectment and recover such possession, or he may at his election affirm what has been done; and treat the money received for his interest as money received to his use."

[10] While it is true that ordinarily ratification is applied to the act of one who purports to act as agent for another without his authority, but it has been applied in many varying classes of cases to the act of one person in dealing with the property of another without his previous consent, and has been specifically applied in this state to the act of one cotenant in dealing with the common property without the previous consent of his cotenant, Broom v. Pearson (Tex. Civ. App.) 180 S. W. 895. The only objection that could be urged to the application of the rule laid down in Broom v. Pearson, supra, to this case, would arise from the statute of frauds, but as pointed out in the original opinion, the acts relied upon to constitute ratification in this case were in writing and identified the land, specifically referred to the interest of the respective parties thereunder, and in effect stated that the ratifying parties recognized that appellants held a valid lease upon said land for the purpose of mining for oil and gas.

[11] Appellees vigorously assert, however, that these division orders are not conveyances and cannot be construed as such, nor did we so hold, but we do believe that they are available as evidence of ratification and acquiescence, and that unexplained they constitute indisputable evidence thereof. A review of the matter has confirmed the belief that the law relating to tenancy in common

as applied to the facts of this case requires a holding that the uncontradicted evidence shows a ratification on the part of appellees of the lease executed by Hill and wife. Appellees characterize as "remarkable" the statement in the opinion that:

"When appellants drilled the first productive well on said premises, appellees had, as to the oil produced therefrom, open to them two courses; one was to take one-fourth of the oil less one-fourth of the expense of drilling said productive well and operating the same, or to ratify the lease executed by the Hills and take their proportion of the royalty and cast upon appellants the burden of paying all expenses."

If this statement is remarkable, we have the consolation that it did not originate in this court. It is an exact quotation from Mills and Willingham on the Law of Oil and Gas as found on page 270 thereof, and as set forth in 7 R. C. L. § 75, p. 879, and is exactly what the Supreme Court of Louisiana said in Liles v. Producers' Oil Co., 155 La. 385, 99 So. 339. We quote from the syllabi:

"Owners of an undivided interest in lands, subject to oil leases granted by their co-owners, who have been deprived of their share of the profits from the oil taken from the land have the choice of one of two remedies: One ex delicto, as for damages for an offense or quasi offense, the measure of damages for which would be the value of the oil and gas wrongfully extracted; the other for the money which their co-owners and the lessees had received from the oil and gas obtained from the land and appropriated to their own use, thereby ratifying the leases made of their interest by their co-owners."

To the same effect are the cases of Sommers v. Bennett, 68 W. Va. 157, 69 S. E. 690; Patterson v. Clem, 79 W. Va. 666, 91 S. E. 654. The suggestion is made in the motion that if the doctrine announced above was correct that the appellees would have been entitled to recover of Hill and wife one-fourth of the bonus money or down payment made by appellant for the second lease, and that this is not the law. This is exactly what is held in the case of Sommers v. Bennett, supra. We again quote from the syllabi:

"Where land * * * has been leased for oil and gas purposes by a cotenant * * * without the consent of the other cotenant, * * * but such lease is subsequently ratified in a suit for an accounting of rents and profits, the accounting should include all money received by the lessor, cotenant * * * by way of bonus money, * * * and from royalty oils and gas rentals, or otherwise, accruing under such lease."

The statement criticized may be remarkable, but the quotations from the above cases indicate that it is not without respectable authority to support it. While the question is not presented for decision, we see no ob-

jection to it on either logical or equitable grounds. If one tenant in common assumes to deal with the whole property and to convey the whole of the common property, then his cotenant should certainly have the right to ratify the sale of the property and claim his share of the profits arising from the sale. Further complaint is made of the holding because the opinion acquiesces in the trial court's conclusion of fact that there was no prejudice to appellant and that we have in effect applied the doctrine of estoppel while agreeing with the trial court that one of the main elements was lacking. Ratification is a species of estoppel, and where an act of another has been ratified by the complaining party, the ratifying party is estopped to deny the effect of the act which he has ratified, but change of position is not an essential element of ratification as is required in the application of the rule of estoppel in pais. What we mean to say is that, the uncontradicted facts showing ratification, appellees are thereby estopped to deny the effect of the last lease executed by the Hills and that as relates to this matter prejudice or change of position is not required.

While recognizing the deservedly great legal reputation and distinguished ability of the counsel for appellees, we must follow our own conclusion, which is that the decision made is a correct one, and that the motion for rehearing should be overruled, and it is so ordered.