**MONEY PLACEMENT SERVICES, INC., Appellant,**

v.

**MERCANTILE BANK OF HOUSTON, Appellee.**

No. 16742.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 26, 1976.

Rehearing Denied Sept. 30, 1976.

Charles L. Black Aycock, Houston, for appellant.

Charles N. Goldberg, Houston, for appellee.

EVANS, Justice.

This is an appeal from a summary judgment rendered by the probate court, establishing the validity of an equitable lien asserted by the Mercantile Bank of Houston, as a secured creditor, against the proceeds of sale of certain real property which, pursuant to an order of the federal bankruptcy court, had been disbursed to the guardian of the estate of Victor J. Janak, a person of unsound mind. The principal question before this court is whether a judgment of the bankruptcy court entered on November 4, 1974, is res judicata of the Bank's claim asserted in the probate court. This court holds that the claim is barred by the bankruptcy court's judgment and that the cause must be reversed and remanded.

The Bank's claim arises from a loan transaction initiated by letter from Victor J. Janak to Mr. Jim McBee, President of Mercantile Bank of Houston, dated October 6, 1970. In this letter, Mr. Janak asked the Bank to consider a request on behalf of Sherwood Oaks Utilities, Inc. for a one-year loan in the amount of $385,000.00 to be secured by certain improved realty, including property in the Ridgeview Subdivision upon which a water plant was located. Subsequently, loans were made by the Bank to Sherwood Oaks for the total principal amount of $800,000.00, evidenced by a one-year promissory note in the amount of $385,000.00 dated October 30, 1970, and a one-year promissory note in the amount of $415,000.00 dated March 10, 1971, both of which were executed by Victor J. Janak individually and as President of Sherwood Oaks. Both notes were secured by deeds of trust, but the Ridgeview Subdivision property was not described as a part of the property being given as security.

On April 30, 1973, Sherwood Oaks Utilities, Inc. filed a Chapter XI petition in the United States District Court for the Southern District of Texas. On August 31, 1973, as debtor in possession, it filed an application to sell certain property to the City of Houston, including that which had been given as security for the bank's loans and the improvements on the Ridgeview Subdivision property. In this application Sherwood Oaks recited that it was not the owner of the Ridgeview Subdivision realty, but that it did own the improvements on that property. Mercantile Bank filed a reply to this application, asserting that it had a first and valid lien on the property, including the improvements on the Ridgeview Subdivision realty, and that it was entitled to the proceeds of sale. On October 4, 1973, the bankruptcy court issued an order for the sale of all the property, including the improvements on the Ridgeview Subdivision realty which, the order recited, were to be sold for the cash sum of $92,059.00. The order directed that the debtor in possession hold the sale proceeds subject to the further determination by the court of the various liens and claims asserted against the prop-

erty. On October 19, 1973, the probate court entered an order authorizing the guardian of the estate of Victor Janak to sell the Ridgeview Subdivision realty.

On December 28, 1973, both the bankruptcy court and the probate court entered orders confirming the sale of the Ridgeview Subdivision realty and improvements to the City of Houston. As a result of the sale in the bankruptcy court, the Bank received an approximate amount of $828,000.00 from the sale proceeds received by the debtor in possession. The bankruptcy court's order directed the debtor, Sherwood Oaks, to place the sum of $92,059.00, representing the consideration for the improvements on the Ridgeview Subdivision property, in a separate, segregated account pending further orders of the court. The probate court's order of confirmation recited that the estate was to receive a net sum of $7,488.36 for the Ridgeview Subdivision realty and $92,059.00 for the improvements, the award of the latter sum being dependent upon a determination of ownership by the federal bankruptcy court.

On September 6, 1974, the Bank filed a motion in the bankruptcy proceeding asserting, among other things, its first lien claim to the sum of $92,059.00, which represented the consideration for the sale of the improvements on the Ridgeview Subdivision realty. On September 30, 1974, the guardian filed motions seeking disbursements of the sale proceeds to the ward's estate, asserting that the Bank had no lien of any kind or nature against the real property or improvements thereon, and contending that the Bank was not entitled to any portion of the proceeds arising from the sale of the improvements. The debtor in possession, Sherwood Oaks, responded on October 7, 1974, admitting the guardian's claim of ownership of the realty, but contending that the debtor owned the improvements on the realty. Sherwood Oaks also filed its objection to the Bank's motion for payment of the funds, denying that the Bank had a valid and existing first lien upon the property.

Upon this state of the record, the bankruptcy court entered its judgment on November 4, 1974. In this judgment the bankruptcy court found that the matters set forth in the guardian's motion were true, that the improvements on the Ridgeview realty constituted a fixture appurtenant to the realty, and that the guardian was entitled to recover from the debtor in possession the sum of $92,059.00 representing the escrowed sales proceeds of the improvements. In separate findings of fact and conclusions of law the bankruptcy court determined that the guardian's ward was the legal and beneficial owner of the realty upon which the improvements were located; that the ward had advanced large sums of money to the debtor, a substantial portion of which had been used to pay for the improvements; that such advancements had not been paid by the debtor, for which the guardian had duly filed a claim in the bankruptcy proceedings; that the improvements could not be removed from the realty without doing substantial damage; that there was no evidence before the court that the ward had executed any document in favor of the Bank imposing a lien upon the realty or the improvements; that the ward had participated on behalf of the debtor in borrowing certain funds from the Bank for which certain liens and security interests were granted, and in connection with such borrowing, had executed and delivered to the Bank a letter outlining certain property proposed to be given as security for the loan; that the sale had been effected to the City of Houston upon the express condition that the sale proceeds, insofar as applicable to the realty, would be paid over to the guardian and, insofar as applicable to the improvements, would be held in escrow by the debtor pending determination of the ownership of such funds in the bankruptcy court; that the guardian had received the proceeds of the sale of the realty and that the escrowed sum of $92,059.00 represented the proceeds of the sale of the improvements. The court concluded, as a matter of law, that the ward was the owner in fee simple of the realty and also the improvements which constituted a fixture to the

realty; that neither the debtor nor the Bank had been shown to own or have any title to or interest in the realty or the improvements, and that the guardian was entitled to have the escrowed sum paid over to the estate. The Bank gave notice of appeal from this judgment but the appeal was subsequently dismissed on its own motion.

Prior to the entry of the bankruptcy court's judgment, the Bank, on October 23, 1974, had filed a claim in the probate court against the estate of Victor Janak, contending that it owned a secured claim in the total amount of $169,147.30 by virtue of the two promissory notes and Janak's letter proposal, which writings, it alleged, established a valid lien on the Ridgeview Subdivision realty or upon the sale proceeds thereof. This claim was rejected by the guardian and the Bank thereafter filed this action in the probate court, asserting that it was entitled to have its claim established as a preferred debt and lien against the funds representing the sale proceeds of the property, and alternatively seeking to have the claim established as an unsecured claim against the estate. The guardian answered, denying that the Bank was entitled to a preferred lien because it had failed to perfect a security interest in the real property and therefore did not have a valid lien upon the realty or the improvements. It also affirmatively pleaded that the order of the bankruptcy court was res judicata of the matter. Money Placement Services, Inc., an unsecured creditor of the estate, filed a contest on behalf of the unsecured creditors against the Bank's claim, asserting the defense of res judicata and seeking an award of reasonable attorney's fees for benefiting the estate. The probate court then proceeded to consider the pleadings, affidavits and admissions on file in that cause, and rendered summary judgment in favor of the Bank, directing the guardian to recognize the Bank's lien on the proceeds of sale of both the lot and improvements in the total amount of $99,547.36. Money Placement Services, Inc. has alone perfected this appeal from that summary judgment.

Every case must have a stopping point, a place where all controlling issues are finally decided by a court of competent jurisdiction. That point was reached in this case, as to the issues here involved, when the bankruptcy court entered its final judgment denying the validity of the Bank's lien.

The bankruptcy court had jurisdiction to adjudicate the Bank's claim that it held a valid lien against the Ridgeview Subdivision property. A bankruptcy court has summary jurisdiction to adjudicate claims to property in the actual or constructive possession of the debtor at the time the petition is filed, notwithstanding the fact that legal title may rest in a third party. Bankruptcy Act, Sec. 311; *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); 9 Am.Jur.2d, Bankruptcy, Secs. 45, 47, pp. 83–88. Further, an adverse claimant of particular property can consent to the exercise of summary jurisdiction with respect to such property by filing a claim in the bankruptcy proceeding. *Hyman v. McLendon,* 140 F.2d 76, 78 (4th Cir. 1944), cert. den., 322 U.S. 739, 64 S.Ct. 1055, 88 L.Ed. 1572; 9 Am. Jur.2d, Bankruptcy, Secs. 28, 53, pp. 69, 95.

The Bank argues that the cause of action asserted in the bankruptcy court was not the same as the one alleged in the probate court because the bankruptcy court was precluded by statute from recognizing an equitable lien. It directs this court's attention to Bankruptcy Act, Sec. 60(a)(6), which provides in part:

Recognition of equitable liens where available means of perfecting legal liens have not been employed is hereby declared to be contrary to the policy of *this section.*" (emphasis supplied)

Section 60 of the Bankruptcy Act has reference to the avoidance by the trustee in bankruptcy of preferential transfers of property. In the case at bar, there was no issue before the bankruptcy court as to the avoidance of a preferential transfer, and the bankruptcy court expressly determined that the debtor did not have title to either the realty or the improvements.

■ Equitable liens are recognized in bankruptcy. Collier on Bankruptcy, § 70.-62, 14th Ed. 1974; 9 Am.Jur.2d, § 996, pp. 746–747. Mutual mistake is a recognized basis for the imposition of an equitable lien, as where a party by executory contract indicates an intent to subject a particular property to a proposed debt, and then through mutual mistake the property is not adequately described in the final documents. See Collier on Bankruptcy, § 70.62, pp. 695–696; *Walker v. Brown,* 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865 (1896); *Del Rio Bank & Trust Co. v. Cornell,* 57 F.2d 142 (5th Cir. 1932).

■ The bankruptcy court had jurisdiction in equity to decree relief resulting from an error in a written contract of the debtor in possession, caused by mutual mistake, and the bankruptcy laws did not suspend its jurisdiction. *Zartman v. First National Bank,* 216 U.S. 134, 138, 30 S.Ct. 368, 54 L.Ed. 418 (1909).

■ The Bank's theory of an equitable lien was based upon Janak's letter proposal to the Bank and upon his response to request for admissions made in this case, indicating his understanding and intent that the Bank loan was to have been secured by a first lien on the Ridgeview Subdivision property. The Bank's burden of establishing its case upon this theory of recovery was the same in the bankruptcy court as it was in the probate court. Although Janak's testimony was not available to the Bank at the time of the hearing before the bankruptcy court, due to his legal incompetency at that time, the absence of his testimony does not defeat the bankruptcy court's jurisdiction or impair the binding effect of its judgment. The burden was upon the Bank in the bankruptcy proceeding to prove all matters required to sustain its claim. *Freeman v. McAninch,* 87 Tex. 132, 27 S.W. 97, 100 (1894).

■ In the bankruptcy proceeding, the Bank asserted a first lien on the sale proceeds from the sale of the Ridgeview Subdivision improvements, basing its claim upon the assertion that the debtor in possession had intended to grant a lien on the improvements but failed to do so because of a mutual mistake. This claim was resisted by the guardian and by the debtor in possession. As a creditor participating in the proceeding, the Bank was bound by the final adjudication of the bankruptcy court that it had no valid lien against the property. 9 Am.Jur.2d, Bankruptcy, Sec. 507, p. 391; *Miller v. Meinhard-Commercial Corp.,* 462 F.2d 358 (5th Cir. 1972).

■ The defense of res judicata was adequately raised by the affidavits and documentary exhibits filed in opposition to the Bank's motion for summary judgment. See *Darter v. Auto Salvage Systems, Inc.,* 470 S.W.2d 74 (Tex.Civ.App.—Waco 1971, no writ); *Bachman Center Corp. v. Sale,* 359 S.W.2d 290, 292 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.). The summary judgment proof showed the necessary identity of issues and parties to establish, as a matter of law, the defense of res judicata to the claim asserted by the Bank. *Cantu v. Bage,* 467 S.W.2d 680, 683 (Tex.Civ.App.—Beaumont 1971, no writ). Thus, the record reflects that the Bank was not entitled to summary judgment. Since the contestant, Money Placement Services, Inc., did not file a motion for summary judgment, the proper ruling of this court is that the cause be reversed and remanded. *Hinojosa v. Edgerton,* 447 S.W.2d 670 (Tex.1969); *Cowan v. Woodrum,* 472 S.W.2d 749 (Tex.1971).

The judgment of this court is entered without prejudice to any claim which may be asserted in the probate court by Money Placement Services, Inc. for attorney's fees as an expense of administration, on the basis of having preserved or protected the estate on behalf of a class of persons entitled to the fund in issue. See *Kenbel v. Capital National Bank in Austin,* 518 S.W.2d 795, 805 (Tex.1974).

Reversed and remanded.