Edward BARFIELD, et al., Appellants,

v.

V.C. HOLLAND, et ux., Appellees.

No. 12–90–00081–CV.

Court of Appeals of Texas,
Tyler.

July 27, 1992.

Rehearing Denied Feb. 11, 1993.

James S. Robertson, Jr., Tyler, for appellants.

John W. Alexander, Winnsboro and G. Timothy Boswell, Mineola, for appellees.

GERALD T. BISSETT, Retired Justice.[1]

This is an appeal by Edward Barfield, James Dickey, Hemus, Inc., Hal Hudgins, Andrew Swann, Jim Perkins, Marvin Shapiro and Leah Fash, defendants in the trial court, from a summary judgment awarding all of the minerals under three separate and adjoining tracts of land of 33½ acres each in Wood County, Texas, to V.C. Hol-

1. The panel before whom this cause was submitted consisted of T.C. Chadick, Associate Justice (Retired) the Supreme Court of Texas. Honorable Gerald T. Bissett, retired justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi. Honorable Jackson B. Smith, Jr., re- tired justice, Court of Appeals, First District of Texas at Houston, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Tex. Gov't Code Ann. § 74.003(b) (Vernon 1988).

land and wife, Madeline Holland, plaintiffs in the trial court.

The parties will be referred to as "Plaintiffs" and "Defendants," as they were in the trial court, or by name.

## PROCEDURAL HISTORY

Plaintiffs sued Defendants to recover title to all of the minerals under three tracts of land totalling 100 acres in Wood County, Texas. Defendants filed a general denial and pleaded affirmative defenses of bona fide purchasers for value without notice of Plaintiffs' claims, the four-year statute of limitation, estoppel to reform the deeds under which Plaintiffs claim, and for a judgment that the court declare them to be the owner of minerals in accordance with their ownership as revealed by the records of Wood County.

Defendants then filed a motion for summary judgment on the basis that Plaintiffs' cause of action for reformation of the deeds under which they claimed title to all the minerals was barred by limitations. The trial court granted this motion.

Defendants then filed another motion for partial summary judgment, asking the court to hold that as a matter of law Plaintiffs' remaining causes of action are without legal merit, that there are no fact issues, and that Defendants are entitled to ownership of their respective mineral interests as established by the record title in Wood County. This motion was denied by the court.

The defendant Hemus, Inc. is one of the defendant mineral claimants, and Hemus and Company, the predecessor of Hemus, Inc. took an oil and gas lease from Plaintiffs in 1981, paying them for a full 100% mineral interest. Hemus, Inc. filed a counterclaim against the Plaintiffs, seeking reimbursement of excess bonus paid to them in the event the Plaintiffs' mineral title is adjudged in this suit to be less than 100% ownership. Plaintiffs answered the counterclaim, pleading limitations.

Plaintiffs filed a motion for summary judgment, which the court granted, and adjudged that Plaintiffs were vested with full fee title to all minerals in the 100 acres and that the counterclaim of Hemus, Inc. was barred by limitations.

Plaintiffs subsequently filed another motion for summary judgment, requesting attorney's fees which the court granted and ordered that Plaintiffs recover their reasonable attorney's fees and that same should be apportioned against Defendants as later ordered by the court. Plaintiffs and Defendants entered into a written stipulation as to the amount of reasonable attorney's fees and the respective ownership claimed between the Defendants' group for purposes of apportionment. The court rendered a judgment on October 23, 1989, which consolidated all previous summary judgments and became a final judgment which is the subject of this appeal.

In the partial summary judgment signed on August 31, 1989, and in the final judgment, the trial court described the 100 acres as being Tracts "One", "Two" and "Three", which are the same tracts hereafter referred to as Tracts "A", "B" and "C". Tract "One" in the judgment is the same as Tract "A", Tract "Two" in the judgment is the same as Tract "B" and Tract "Three" in the judgment is the same as Tract "C".

## UNDISPUTED FACTS

The 100 acres of land, including both surface and minerals, were originally owned by V. Jarrell and wife, Artie Jarrell, who acquired title from J.F. Barto, et al., by Deed dated December 5, 1912. V. Jarrell died in 1922 and his wife, Artie Jarrell, died in 1960; both died intestate leaving their three (3) surviving children, viz: J.H. Jarrell, Otha Jarrell Phillips, and Tessie Jarrell Barfield, as their only heirs at law. These children each inherited an undivided one-third (⅓) interest in the land including surface and minerals.

Subsequently, the 100–acre tract was surveyed into three (3) 33⅓ acre tracts, which is referred to by the parties and will be referred to by us as Tract "A," Tract "B," and Tract "C."

On January 19, 1963, Otha Jarrell Phillips, joined by her husband, Troy Phillips, conveyed to J.H. Jarrell all of her undivid-

ed interest in the surface of Tract "A," but reserved her undivided interest in the minerals under the Tract.

Also, on January 19, 1963, J.H. Jarrell conveyed to Otha Jarrell Phillips and husband, Troy Phillips, all of his undivided interest in the surface of Tract "B" but he reserved his undivided interest in the minerals under the tract.

Tessie Mae Barfield did not join in either of these deeds, nor did she execute any conveyances with regard to the 100 acres or any of the three (3) 33⅓–acre tracts. Tessie Mae Barfield died intestate in 1969, and was survived by Edward Barfield, her only heir, who inherited the undivided one-third (⅓) interest of Tessie Mae Barfield in the 100 acres.

On March 17, 1969, J.H. Jarrell and Otha Jarrell Phillips joined by her husband, Troy Phillips, conveyed to Edward Barfield all of their undivided interest in the surface of Tract "C," but they reserved all of their undivided interest in the minerals under the tract.

By deeds dated June 23, 1970, J.H. Jarrell and wife, Loura Jarrell, and Otha Jarrell Phillips and husband, Troy Phillips, conveyed Tracts "A" and "B", respectively, to Plaintiffs V.C. Holland and wife, Madeline Holland. Edward Barfield conveyed Tract "C" to plaintiffs V.C. Holland and wife, Madeline Holland, by deed dated June 29, 1970. All three deeds contained covenants of general warranty. The grantors in the deed did not reserve any minerals.

The Hollands paid $10,000.00 to J.H. Jarrell, Otha Phillips, and Edward Barfield each for their respective conveyances. Each deed described a specific 33⅓ acre tract[2] out of the original 100–acre tract. The Hollands immediately went into possession of the three tracts of land, enclosed the same with a fence, made valuable im-

provements to the property, paid all property taxes assessed on the property, and began using the property in their dairy farming operation. The lands have been continuously possessed, used, and the taxes paid thereon since June of 1970 to the present by V.C. Holland and wife, Madeline Holland, and their successors in title. The Hollands sold 20 acres of the surface to Mullins in 1973, reserving all minerals in the deed. They sold the remaining 80 acres of the surface to Ogle in 1979, reserving all minerals.

On March 31, 1976, V.C. Holland and wife, Madeline Holland, leased the 100–acres for oil and gas to John L. Loftis, III.

On February 26, 1981, Plaintiff, V.C. Holland and wife, Madeline Holland, leased the 100–acres for oil and gas to Defendant Hemus and Company (now Hemus, Inc.). Plaintiffs warranted their ownership of the 100 acres of minerals and were paid by Hemus based on a 100% ownership of the minerals. This lease was subsequently assigned to Trend Resources. The property subsequently was developed and went into production under this lease.

In June of 1984, Trend Resources discovered that the Hollands did not own, according to the record title, the full 100–acres of minerals. Accordingly, Trend took additional mineral leases as follows:

1. Trend leased the interest of Loura Jarrell by lease dated June 22, 1984.[3]

2. Trend leased the interest of Troy Phillips by lease dated June 22, 1984.[4]

3. Trend leased the interest of Edward Barfield by lease dated June 22, 1984.

The interest of the Hollands, as well as all of the interest of the Jarrell heirs and assigns is now leased and is in mineral production. The leased premises are oper-

---

2. All of the deeds described the lands conveyed by metes and bounds, being the identical description in the aforesaid deeds to Tracts "A", "B" and "C".

3. J.H. Jarrell died intestate on May 22, 1982, and was survived by Loura Jarrell, his wife. Since he was not survived by children or descendants of deceased children, and as his interest in both the 100–acre tract and in Tract "A"

was his separate property, one-half of such interest passed to Loura, his wife, and the remaining one-half passed to Otha Phillips and Edward Barfield, his sister and nephew, respectively.

4. Otha Jarrell Phillips died testate on August 3, 1983, and left all of her property to Troy Phillips, her husband.

ated by FMP Operating Company and Adobe Resources Corporation, who have been non-suited.

The mineral interest of Edward Barfield is still claimed and owned by him.

The mineral interest formerly owned by Otha Jarrell Phillips, and later owned by her husband, Troy Phillips, now deceased, is now owned by Defendant, James Dickey.[5]

By royalty deed dated May 4, 1985, Loura Jarrell deeded all of her undivided interest in the royalty under the 100–acres to Hemus, Inc., in consideration of payment of the cash sum of $22,220, calculated at the rate of $1000 per acre. This royalty interest has been divided among the following Defendants in this suit: Hemus, Inc., Leah Fash, Marvin Shapiro, Paul Barenkemp, Hal Hudgins, Jim Perkins, Paul Champion and Andrew Swann.

Trend Resources expended $7,400.00 in acquiring the leases from Loura Jarrell, Troy Phillips, and Edward Barfield. On October 9, 1984, Hemus, Inc., reimbursed Trend Resources the $7,400.00.

All of the deeds and mineral leases, above-mentioned, were timely filed for record and duly recorded in the Deed Record of Wood County, Texas. All conveyances and leases affecting Tracts "A," "B" and "C" described the lands conveyed or leased by metes and bounds.

### THE APPEAL

#### The Equitable Partition Issue

Defendants present three points of error. They contend in their first point of error that the trial court erred in rendering summary judgment for Plaintiffs and in holding that Plaintiffs were owners of all minerals underlying the 100–acre tract. They argue that the doctrine of equitable partition does not support the judgment. On the other hand, Plaintiffs argue that the doctrine of equitable partition supports the judgment in that the mineral estate of the 100–acre tract was "divided in accordance with the deeds given [to Plaintiffs] by Jarrell, Phillips and Barfield."

We have not found a case, nor have the parties cited a case in their briefs, that defines the doctrine of equitable partition. The Plaintiffs say the "essential elements of the doctrine of equitable partition are: 1) a conveyance of a specific tract of the common property; 2) the nonjoinder of all cotenants in the conveyance; and 3) the treatment of the common property including specific tracts as having equal value."

It is well established that surface and minerals constitute two separate and distinct estates in real property, each of which may be freely conveyed or partitioned. The general principles of real property law in Texas have equal application to each of these estates. *Texas Co. v. Daugherty*, 107 Tex. 226, 176 S.W. 717, 719 (1915); *Stephens County v. Mid–Kansas Oil & Gas Co.*, 113 Tex. 160, 254 S.W. 290, 292 (1923); *Humphreys–Mexia Co. v. Gammon*, 113 Tex. 247, 254 S.W. 296, 299 (1923).

■ The doctrine of equitable partition applies uniformly to the conveyance of the surface estate as well as to the mineral estate. *Thomas v. Southwestern Settlement & Development Co.*, 132 Tex. 413, 123 S.W.2d 290, 300 (1939).

■ When one cotenant conveys a specific part of a larger tract of land to another cotenant which does not exceed in value the interest of the conveying cotenant in the larger tract, so that the remaining cotenants are not prejudiced thereby, equity, in adjusting the rights of all cotenants will uphold the conveyance. *Peak v. Swindle*, 68 Tex. 242, 4 S.W. 478, 482 (1887); *Thompson v. Whitfield*, 203 S.W.2d 268, 270 (Tex.Civ.App.—Texarkana 1947, writ ref'd n.r.e.); *Welch v. Brock*, 195 S.W.2d 940, 942 (Tex.Civ.App.—San Antonio 1946, writ ref'd n.r.e.).

[T]he doctrine [of equitable partition] is an equitable doctrine which concerns itself primarily in protecting the vendee in the part of the land conveyed to him,

**5.** Troy Phillips died testate on February 5, 1985. His interest in the minerals, including the inter-

est inherited by him from Otha Jarrell Phillips, his deceased wife, was devised to James Dickey.

when and to the extent that this case be done without prejudice to the cotenants of the whole tract, and which is the appointment of such primary object undertakes fairly to adjust the equities of all of the interest parties.

*Id.; Thomas v. Southwestern,* 123 S.W.2d at 296.

The court in *Lasater v. Ramirez,* 212 S.W. 935 (Tex. Comm'n App.1919, opinion adopted), said:

> The right of a purchaser from one tenant in common to the specific tract conveyed to him does not depend, and is not based upon, the nonjoining tenants' assent to, acquiescence in, or recognition of, the sale; nor is it created through estoppel. The right exists independent of any act or conduct on the part of the nonjoining tenants, and is conditioned solely upon the question whether its enforcement would prejudice or injuriously affect the other owners.

*Id.* at 936.

The court concluded in *Larrison v. Walker,* 149 S.W.2d 172 (Tex.Civ.App.—Texarkana 1941, writ ref'd), where a cotenant sold a specific part of land out of the larger part:

> [T]he deeds of a tenant in common to specific parcels of the land are not absolutely void. They are always good as against the grantor. Such deeds do not convey or destroy any of the title of the nonjoining cotenants to their undivided interest to the lands described in the deeds. The nonjoining cotenants may avoid such deeds, if and to the extent only they are injured by such deeds. Though one cotenant has no power to divest the title of other cotenants by selling specific parts of the common property, yet under the well-settled doctrine of equitable partition the court in adjusting the equities of all the interested parties will protect such purchasers by setting aside to them the particular tracts purchased, if it can be done without injury to the other owners, where, as here, the acreage of the common property is of equal and uniform value; and will set aside to the nonjoining cotenants

the equivalent of their interest in all the land out of the unsold tract if it is sufficient to satisfy same....

*Id.* at 176. *See also, Gaines v. Lee,* 175 S.W.2d 728, 730 (Tex.Civ.App.—Waco 1943, writ ref'd).

■ As already noted, J.H. Jarrell and Otha Jarrell Phillips exchanged deeds, in 1963, whereby J.H. Jarrell conveyed all of his undivided interest in the surface of Tract "B" to Otha Jarrell Phillips, and Otha Jarrell Phillips conveyed all of her undivided interests in the surface of Tract "A" to J.H. Jarrell. For some reason unknown, Tessie Mae Barfield, the other cotenant did not participate in what amounted to a partial partition of the surface. However, in 1969, J.H. Jarrell and Otha Jarrell Phillips conveyed all of their undivided interest in the surface of Tract "C" to Edward Barfield, the only heir at law of Tessie Mae Barfield, deceased. Edward Barfield accepted said deed as his fair share of the surface of the 100–acre tract as evidenced by his sale of Tract "C" to the Hollands in 1970. Moreover, Edward Barfield is estopped to deny the partition of the surface by the doctrine of partition by estoppel. *See, Joiner v. Christian,* 131 Tex. 274, 113 S.W.2d 1229 (Comm'n App.1958, opinion adopted). Considering the totality of the deeds executed by J.H. Jarrell and Otha Jarrell Phillips, and the acquiescence of Edward Barfield, we hold that there was a partition of the surface of the 100–acre tract which resulted in J.H. Jarrell owning a fee simple title to the surface of 33⅓ acres (Tract "A"), Otha Jarrell Phillips owning fee simple title to the surface of 33⅓ acres (Tract "B"), and Edward Barfield owning fee simple title to the surface of 33⅓ acres (Tract "C"), and that each tract had a value of $10,000.00.

■ The partition of the surface of the 100–acre tract resulted in a severance of the surface estate from the mineral estate, and at the time and on the date of the purchase by the Hollands of the three tracts of 33⅓ acres each, the surface of each tract was owned by each of the grantors, but the minerals on, in, and under the 100–acre tract were undivided and were

owned one-third by J.H. Jarrell, one-third by Otha Jarrell Phillips and one-third by Edward Barfield. We so hold despite the fact that the deeds to the Hollands purported to convey both the mineral estate and the surface estate. The facts are that at the time of the conveyance to the Hollands, three separate 33⅓ acre tracts with separate ownerships in the surface had been created, thus, leaving the mineral estate intact and undivided with respect to the 100–acre tract, and Plaintiffs (the Hollands) are limited in their recovery to the specific tracts of land covered by each separate deed.

The doctrine of equitable partition applies only to an adjustment of equities between the cotenants themselves. When there has been a severance of the mineral estate from the surface estate by the cotenants, as is the case here, a purchaser who purchases the larger tract, by accepting separate deeds conveying separate tracts of land out of the larger tract, each described by metes and bounds, from the cotenants who had, in legal effect, partitioned the surface of the larger tract, and reserved the mineral under the partitioned tracts, cannot be awarded the entire mineral estate on, in and under the larger tract.

The Hollands bought the three tracts of land with full knowledge of the record title. Such title showed that there had been a severance of the mineral estate from the surface estate and that the surface estate had been partitioned. They acquired only what the grantor owned in each tract, and that is all of the surface and an undivided ⅓rd of the minerals as to each tract. They did not acquire any equities that compelled the partition of the minerals on, in and under the 100–acre tract so as to vest them with title to the entire mineral estate. To put it differently, they cannot compel the adjustment of other equities owned by the former cotenants in order for them to acquire what they thought they had purchased. *See Broom v. Pearson*, 180 S.W. 895, 898 (Court of Civil Appeals—Texarkana 1915, writ ref'd).

As said in *Arnold v. Cauble*, 49 Tex. 527, 535 (1878), quoting from *Mitchell v. Hazen*, 4 Conn. 510:

> [A] purchaser from a co-tenant cannot be shifted from the locality specified in his deed to some other portion of the same tract of land in which his vendor had an interest as co-tenant, because in this portion of the property his deed gives him no right or estate; nor can he have any communicated by a partition which is no conveyance, but a distribution founded on an antecedent right.

The courts of this State have refused to apply the doctrine of equitable partition between different tracts of land owned by the same vendor; instead, they have limited the doctrine to the land actually covered by the deed between the cotenant vendor and his vendee. *See Broom v. Peerson*, 180 S.W. 895, 16 Tex.Jur.3d., COTENANCY AND JOINT OWNERSHIP § 23 (1981). The same applies in the case at bar. Plaintiffs cannot shift the "locality" specified in each of the separate deeds to other portions of land in which the vendors have an interest of their grantor in the tract of land conveyed by each deed tendered to them. Plaintiffs have no right to effect a "partition" with their grantors by claiming their interest in land not covered by each grantor's deed, as Plaintiffs are attempting in the case at bar.

Plaintiffs have not brought a suit for partition in this case. They are seeking to establish title to all the minerals. There can be a partition only between two or more cotenants. Plaintiffs recognize no other cotenants but claim all of the minerals to exclusion of everyone else. This case is not a suit for partition (equitable or legal) by the very definition of partition. Plaintiffs are, therefore, left with a suit for title in which their title is governed by the construction of each of the deeds in their chain of title. The doctrine of equitable partition gives no support to the summary judgment ordered by the trial court.

### THE DOCTRINES OF RATIFICATION AND ACQUIESCENCE

Plaintiffs further argue that the doctrines of ratification and acquiescence sup-

port the summary judgment because J.H. Jarrell, Otha Jarrell Phillips and Edward Barfield ratified and acquiesced in their (Plaintiffs') title to the whole 100–acre tract as a matter of law by the election of each of them to deal with a specific tract of the common property in the simultaneous execution of their deeds to Plaintiffs, and their failure as well as that of their successors in interest to claim any part of the 100–acres for a period of fourteen (14) years. We do not agree.

■ The "election" of each of Plaintiffs' grantors in dealing with a specific tract is a natural consequence of the prior surface partition of the 100–acres wherein three separate tracts of 33⅓ acres each were set apart in severalty to J.H. Jarrell, Otha Jarrell Phillips and Edward Barfield. Each of the three owned all of the surface in the 33⅓ acre tract that each deeded to Plaintiffs. By three separate deeds covering three separate tracts of 33⅓ acres each, Plaintiffs, in effect, purchased all the surface of the 100 acres, and since no reservations of minerals were made in the deeds, Plaintiffs also acquired by each deed the undivided one-third interest in the minerals owned by the grantor in that deed. The minerals which had been excluded from that partition were still owned in undivided shares by the grantors in the deeds to Plaintiffs. The prior surface partition and its express exclusion of the minerals was an essential link in the chain of title of which Plaintiffs, as purchasers, had actual notice as a matter of law. *Westland Oil Development Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903 (Tex.1982).

Plaintiffs did not purchase a 100–acre tract by means of a deed. They purchased three separate tracts of 33⅓ acres each from three separate sellers. The fact that the three tracts had at one time been a part of the same base tract is immaterial.

The ratification and acquiescence doctrines are relevant to equitable partition cases, but as discussed above, the case at bar is not an equitable partition case. Ratification and acquiescence has been discussed in the context of a non-joining cotenant electing to recognize or ratify the

act of his cotenant who has attempted to convey a specific part of the common property to another. *See, Simpson–Fell Oil Co. v. Stanolind Oil & Gas Co.*, 136 Tex. 158, 125 S.W.2d 263 (1939); *Harrison Oil Co. v. Sherman*, 66 S.W.2d 701 (Tex.1933). In the case at bar, none of the grantors conveyed a specific part of any undivided common property, and this is a vital distinction between this case and the cases cited by Plaintiffs.

■ Plaintiffs are also in error in stating that ratification and acquiescence in their title is supported by the failure of their grantors and their assignees to claim any part of the 100–acres for a period of 14 years. Each of the grantors executed oil and gas leases in 1984, covering their mineral interests in the two 33⅓ acre tracts not covered by their respective deeds. In 1985 Loura Jarrell, widow of J.H. Jarrell, deeded her royalty interest in the whole 100–acres to Hemus, Inc. Plaintiffs cannot claim limitations against the severed mineral ownership concurrent with their possession of the surface, merely because Defendants did not actively produce their minerals for a period of years. The doctrines of ratification and acquiescence do not support the summary judgment.

## ALLEGED SUPPORT BY ESTOPPEL

■ Plaintiffs sought a "declaration of the Court that Defendants are estopped to deny the validity and effect of their own deeds in the aggregate so as to deny Plaintiffs' fee simple title in the 100 acre tract," due to alleged representations made by Defendants of their title and reliance on the same by Plaintiffs, who went into possession and made improvements on the land.

Estoppel to deny representations which may or may not have been made by Plaintiffs' grantors is simply not relevant in the interpretation of Plaintiffs' land title. As a matter of law, the chain of title of each of their grantors included the reservation of minerals in the last deed in that chain whereby Plaintiffs' grantors acquired title to the surface of the separate tracts which they later conveyed to Plaintiffs. *See*, 30 Tex.Jur.3d § 151, LANGE, DEEDS; *Land Ti-*

*tles and Title Examination,* § 816 at p. 259 (1961). Land titles are governed by notice imparted by the deeds in the chain of title, duly recorded in the public records of the county where the land is situated, and not by personal representations, warranties, reliance, and estoppel, as alleged by Plaintiffs. These grounds alleged by Plaintiffs, thus, give no support to the summary judgment rendered by the trial court, ordering that Plaintiffs were vested with fee simple title to the three 33⅓ acre tracts.

### ALLEGED SUPPORT BY ADVERSE POSSESSION

Plaintiffs further argue that the summary judgment is supported by the doctrine of adverse possession; they argue that they have acquired title to the mineral interest of Edward Barfield in the entire 100–acres by adverse possession. In support of that argument, they say that the mineral interest of Barfield has never been severed from his surface interest in the subject 100–acres, and the minerals belonging to Barfield to the Jarrell and Phillips tracts (Tracts "A" and "B"), which were deeded to Plaintiffs by Jarrell and Phillips respectively, have been acquired by the Plaintiffs by limitations. We disagree.

As discussed above, Jarrell and Phillips attempted a partition of the surface by the exchange of deeds executed in 1963. Tessie Mae Barfield, the remaining cotenant, did not join in this partial surface partition, and it was therefore a void partition (at Tessie Mae Barfield's election) due to her non-joinder. Tessie Mae Barfield was at this point put to an election, either to deal with her part of the whole tract, to sue for a new partition, or to accept the benefits of the prior partition. She never exercised such election and did nothing. In 1970, Edward Barfield, the then successor in title to the interest formerly owned by Tessie Mae Barfield, executed a deed to the Hollands, describing and conveying the tract, the surface of which had been set aside to him in the deed from J.H. Jarrell and Otha Jarrell Phillips, as already stated. By taking this action, as has been noted, he accepted and ratified the prior partition by his actions and thus became bound by it.

He, therefore, became estopped to deny the prior surface partition, by the doctrine of partition by estoppel. *See Joiner v. Christian,* 113 S.W.2d at 1232–1233. Subsequent to the 1970 conveyances made to Plaintiffs, Barfield made no claims of ownership or attempted to exert any use or control over the surface of the lands conveyed.

■ In their motion for summary judgment, Plaintiffs correctly stated the rule that adverse possession of the surface also extends to the underlying mineral estate. However, once there has been a severance of the minerals, adverse possession of the surface will not mature a limitation title to the minerals. Therefore, occupation of land under a chain of title which contains a mineral reservation is not adverse to the reserved minerals. *Steed v. Crossland,* 252 S.W.2d 784, O. & G.R. 1848 (Tex.Civ. App.—Beaumont 1952, error ref'd); *Williams & Meyers, Oil & Gas Law,* § 224.1.

■ As to each Tract "A", "B" and "C", after the surface had been partitioned between J.H. Jarrell, Otha Jarrell Phillips and Edward Barfield following Edward Barfield's acceptance of the deed from J.H. Jarrell and Otha Jarrell Phillips conveying the surface of Tract "C" to him, a different surface title and mineral title was created as to each tract, because of the severance of the mineral estate from the surface estate. After severance, adverse possession of the minerals can only be acquired by actually producing the minerals and taking them from the ground. *Greene v. White,* 137 Tex. 361, 153 S.W.2d 575, 585 (1941); *Rio Bravo Oil Co. v. McEntire,* 128 Tex. 124, 95 S.W.2d 381, 387 (Tex.Comm'n App. 1936, opinion adopted); *Reeves v. Republic Production Co.,* 177 S.W.2d 1011, 1013 (Tex.Civ.App.—Galveston 1944, writ ref'd).

Plaintiffs rely upon *Beets v. Hickok,* 701 S.W.2d 281 (Tex.App.—Tyler 1985, no writ); *Bradshaw v. Holmes,* 246 S.W.2d 296 (Tex. Civ.App.—Amarillo 1951, writ ref'd n.r.e.); *Jones v. Siler,* 129 Tex. 18, 100 S.W.2d 352 (Comm'n App.1937, judgment adopted). The reliance is misplaced. Those cases

deal with conveyance by less than all cotenants, followed by possession, amounting to a repudiation and disseizin of the non-participating cotenant. That is not the case in this appeal. We conclude that Plaintiffs did not acquire title to the mineral estate of the 100–acres by limitations.

### THE BONA FIDE PURCHASER ISSUE

As before stated, the defendant Hemus, Inc. purchased all of the royalty interest of Loura Jarrell (surviving wife of J.H. Jarrell, one of the original Jarrell heirs) by Royalty Deed dated May 4, 1985.[6] By mesne conveyances, this interest ultimately became vested in the Defendants Hal Hudgins, Andrew Swann, Jim Perkins, Marvin Shapiro, Leah Fash (and Paul Champion, who is not an appellant before this Court). In their first amended original answer and also in affidavits in support of Defendants' motion for summary judgment, each of these Defendants claimed that they were bona fide purchasers of the Jarrell royalty, and that they paid valuable consideration for their respective interests in good faith and without notice of the claims of the Plaintiffs of a conflicting equitable mineral ownership in the entire 100 acres.

Plaintiffs argue that these Defendants are precluded from asserting their claims as bona fide purchasers because of the fact that the Plaintiffs had given an oil, gas and mineral lease to Hemus & Company (predecessor to Hemus, Inc.) on February 26, 1981, covering the three tracts composing the 100–acres, and Hemus paid Plaintiffs for a full interest lease. Plaintiffs, therefore, argue that Hemus, Inc. had actual and constructive notice of Plaintiffs' claim to the 100–acres, and the other Defendants (Hal Hudgins, Andrew Swann, Jim Perkins, Marvin Shapiro, and Leah Fash) had constructive notice of the Plaintiffs' claim to the 100–acres because that lease was of record when these Defendants purchased the Jarrell royalty, and they are charged with constructive notice of all instruments in their chain of title.

The title to the subject 100–acres undisputedly shows that the Plaintiffs own the legal and record title to no more than an undivided one-third of the minerals because they acquired no greater title than what their grantor in each deed owned, which was one-third mineral interest each. Plaintiffs have given legal notice of their claim in equity only by the filing of their third amended original petition in the trial court on September 2, 1988. According to Defendants' affidavits, their interests were purchased based upon the legal title which was shown to be vested in Loura Jarrell by the land records on file in Wood County and on representations of ownership made to them by Loura Jarrell. Defendants' purchase of apparent legal title thus predates Plaintiffs' assertions of conflicting equitable ownership.

The law is settled in Texas that the purchaser of apparent legal title to land takes a good title thereto as against an equitable owner, if such purchaser takes in good faith for a valuable consideration, and without notice of such outstanding equitable title. *Realty Trust Co. v. Craddock,* 131 Tex. 88, 112 S.W.2d 440, 442 (Tex. 1938); LANGE, *Land Titles and Title Examination,* § 811.

Plaintiffs' argument as to constructive notice fails because the recorded mineral lease from the Plaintiffs to Hemus and Company, in itself does not indicate that they, the lessors, have or claim ownership of 100% of the minerals. All three tracts of land are described as separate tracts in the lease, and there is no representation of any specific interest owned by the lessors. The purpose and effect of the lease is to cover all interest of the lessors, whatever that may be. Paragraph 10 of the lease contains the standard proportionate reduction clause, contractually adjusting the lease benefits in proportion of the lessors' actual mineral ownership in the entire fee estate.

The instant case is somewhat similar to *Stowe v. Head,* 728 S.W.2d 120 (Tex.App.—Tyler 1987, no writ). In that case there

---

**6.** On April 24, 1985, Hemus, Inc. also acquired an undivided 20 acre interest in the royalty in

the 100–acres from the Plaintiffs V.C. Holland and wife Madeline Holland.

was also a partition of the surface estate of 1166.48 acres in 1967, in which Ione LeGory was awarded title to a 290.85 acre surface tract. Her estate conveyed this 290.85 acre tract to Head in 1972 by warranty deed with no reservation or exception of the minerals. The LeGory Estate also owned an undivided one-fourth interest in the minerals under the entire 1166.48 acres, and Head filed suit for reformation, claiming that the parties had agreed that Head was to receive the one-fourth mineral interest of the grantor in the entire 1166.48 acres, as well as the surface of the 290.85 acre tract which had been partitioned to her grantor. In answer to special issues, the jury found that there had been such an agreement for Head to receive the one-fourth minerals under the entire 1166.48 acres and that the failure to include such mineral interest in the deed was the result of a mutual mistake. The trial court entered a judgment n.o.v. for the Defendants, holding that the Plaintiffs' reformation action was barred by the four year statute of limitations and also denying the Plaintiffs' petition for declaratory judgment. This Court affirmed the trial court's judgment on these issues, and held that the recorded partition deed was an essential link in the Defendants' (Appellants') chain of title to the 290.85 acres and that a grantee is charged with constructive notice of each recital, reference and reservation contained in any instrument which forms an essential link in the chain of title under which he claims. This Court noted that in that case the mistake on which the reformation was based was the mistaken belief that the partition deed awarded to each cotenant of the 1166.48 acres the oil, gas and other minerals underlying the tract awarded each cotenant. That, likewise, is the alleged mistake in the case at bar. It was also held in *Stowe* that the LeGory Estate was estopped from claiming ownership of any interest in the minerals in the 290.85 acres covered by their deed, since the deed contained no reservation of minerals and contained a general warranty, citing *Duhig v. Peavy–Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940).

In the case at bar, Barfield stated in his affidavit in support of Defendants' motion for summary judgment that he did not intend to convey any minerals in his deed to the Hollands and he did not realize any were conveyed since the deed made no actual mention of the mineral estate. However, Barfield concedes that the four-year statute of limitations applies to any claim for reformation he would have, as well as to the reformation claim of the Plaintiffs, so that he may not now recover any minerals under the 33⅓ acre tract which he conveyed by warranty deed to the Hollands.

The only real apparent difference in the case at bar and *Stowe* is that in *Stowe* Plaintiffs based their case strictly on an action for reformation, as plaintiff in the case at bar did initially, and the Plaintiffs in *Stowe* failed to urge an equitable partition with their mineral cotenants in the larger 1166.48 acre tract in order to recoup their mineral shortage in the 290.85 acre tract which had been deeded to them by their grantor, who owned the surface and only an undivided mineral interest in that tract. The facts and principles in the *Stowe* case and the present case are the same. *See also, Sherman v. Sipper*, 137 Tex. 85, 152 S.W.2d 319, 321 (1941).

The Hollands (Plaintiffs) were in possession of information showing that minerals had been clearly and unambiguously reserved in the deed to each of their three grantors, and as purchasers of the land described in each of their deeds (each covering a different tract of 33⅓ acres), they had constructive notice of all information contained in the chain of title of each of their grantors, and they are thus bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in that chain. *See, Westland Oil Development Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903 (Tex.1982); 30 Tex.Jur.3rd § 151, Deeds.

We conclude that the defendant Hemus, Inc. and the other Defendants claiming under it, are bona fide purchasers, and the interest purchased by them are not subject

to the claims of equitable ownership by Plaintiffs.

### THE COUNTERCLAIM OF HEMUS, INC.

■ Hemus and Company (whose legal successor is the defendant Hemus, Inc.) on February 26, 1981 bought an Oil, Gas and Mineral Lease from the Plaintiffs, V.C. Holland and wife Madeline Holland, covering the three separate 33⅓ acre tracts. The lease was purchased with warranty of title, for the bonus consideration of $10,-000.00. Hemus assigned the lease to Trend Resources Limited ("Trend") as a full interest lease. A subsequent title examination revealed that other interests in the properties were unleased (i.e., Jarrell, Phillips and Barfield), and Trend acquired additional leases at a cost of $7,400 so that all minerals would be leased and the lands could be efficiently utilized for drilling purposes. Trend then made demand on Hemus for reimbursement of the sum of $7,400, and Hemus paid Trend $7,400. Then on February 15, 1989, Hemus, Inc. filed a counterclaim against the Plaintiffs for recovery of actual damages of $7,400 from breach of the lessors' warranty, in the event it is determined that the Hollands own less than all minerals in the three tracts leased. The trial court held in its summary judgment that the counterclaim was barred by limitations as a matter of law. We disagree.

The conflicting claims of title as evidenced by this litigation, the fact that payment of proceeds from the sale of production has been suspended by the owners and operators of the leases until title is resolved, and the resulting uncertainty of ownership, are in themselves reason why Hemus' action against the Hollands should be held not to mature until the real ownership of minerals is finally resolved from this litigation and it is determined whether, in fact, the warranty in the Holland lease was breached and whether excess consideration was paid the Hollands for what they purported to bargain and convey.

The Supreme Court of Texas in *Gibson v. Turner*, 294 S.W.2d 781, (Tex.1956), said the following about the warranty in an oil and gas lease:

> The covenant of general warranty in a lease does not warrant the title of the lessors. It warrants the title of the lessees. It is for this reason that there can be no breach of warranty unless and until there has been an actual or constructive eviction of the lessee. In 14 Am.Jur. 521, Covenants, Conditions and Restriction, Sec. 51, we find this statement of the nature of a covenant of general warranty: 'The covenant of warranty is an agreement by the warrantor that upon *the failure of the title* which the deed purports to convey, either of the whole estate or part only, he will make compensation in money for the loss sustained. *It is an assurance or guaranty of title. The obligation is not that the covenantor is the true owner or that he is seised in fee with the right to convey, but that he will defend and protect the covenantee against the rightful claims of all persons.'*

*Id.* at 787 (first emphasis ours) (second emphasis in original).

Plaintiffs, the lessors in the lease to Hemus and Company, insist in this suit that they have title to 100% of the minerals. They argue that there has been no failure to title in their lease. Since ownership of the minerals has been in dispute, and there has been no definite adjudication of title, the title of Plaintiffs in their lease had not failed as of the date this suit was filed, and they cannot thus compensate their lessee for any loss sustained until it is resolved whether in fact their lessee had sustained a loss by ownership of their lease.

The time for asserting breach of warranty by the defendant Hemus, Inc. had not matured at the time their counterclaim was filed, and limitations against any potential claim for breach of warranty which Hemus possesses cannot run until the cause of action had been matured. *See* 50 Tex.Jur. 3d., LIMITATION OF ACTIONS § 54 (1986). The trial court, therefore, erred in holding that the counterclaim of Hemus, Inc. was barred as a matter of law by limitations.

## THE ATTORNEY'S FEES ISSUE

■ Plaintiffs recovered attorney's fees under V.T.C.A., TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 by styling their suit to recover title as one for declaratory judgment. There is in this suit no question of "construction" or "validity" of the deeds by which the Plaintiffs acquired their title, and this is therefore not a proper subject matter for declaratory relief under § 37.-004 of the Code. This suit is, in effect, one for recovery of land based upon an equitable title, under the doctrine of equitable partition, and as such it is an action for trespass to try title and not for declaratory judgment. *See, Griffin v. Collins,* 310 S.W.2d 137, 139 (Tex.Civ.App.—Amarillo 1958, no writ). Furthermore, even though the Uniform Declaratory Judgment Act provides a procedural device for the construction of validity of deeds by those whose rights are affected by such instruments, the substantive rights of the parties in this suit are governed by the Trespass to Try Title statutes, TEX.PROP.CODE ANN. §§ 22.001–.045, which made no provision for attorney's fees. *See Kennesaw Life & Accident Insurance Co. v. Goss,* 694 S.W.2d 115, 118 (Tex.Civ.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.), where the Court of Appeals held that the trial court abused its discretion in using the Declaratory Judgment Act to settle a title dispute and awarding attorney's fees under the act.

■ Since Plaintiff's claim against the defendant Barfield is based on adverse possession, Plaintiffs would have a potential claim against Barfield for attorney's fees under V.T.C.A. Tex.Civ.Prac. & Rem.Code § 16.034—but only if written notice is delivered by registered or certified mail at least 10 days before filing suit for possession. No prior notice was given to Barfield, and none was pleaded; therefore, Plaintiffs are not entitled to the attorney's fees provided by this statute. Moreover, plaintiff did not prevail in their suit.

The trial court erred in holding that Plaintiffs were entitled to recover attorney's fees from Defendants.

## THE CROSS POINT

■ Plaintiffs present a crosspoint in which they claim that "the trial court erred in rendering partial summary judgment for Defendants in that Plaintiffs' cause of action for reformation was barred by the four-year statute of limitations as a matter of law." We do not agree.

Plaintiffs argue that the summary judgment evidence shows conclusively that they did not have any *actual* knowledge of any instrument of record in Wood County which showed that they had not acquired all of the mineral underlying the 100–acres until 1985, and that this suit was filed within four years from the date of *actual* discovery that they did not acquire 100% of the minerals when they purchased the lands from J.H. Jarrell, Otha Jarrell Phillips and Barfield in 1970. They rely upon *Brown v. Havard,* 593 S.W.2d 939 (Tex. 1980) and *Henderson v. Henderson,* 694 S.W.2d 31 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Plaintiffs in this case have failed to establish that a *mutual mistake* was made in their three deeds, as is the case of the clerical error in *Henderson,* or that there was any *ambiguity,* as in *Brown.*

Plaintiffs' duty to inquiry as to what would be conveyed by the three deeds was to examine the public records of Wood County with respect to the title to such lands, not to rely on representations made by the grantors of the deeds. Plaintiffs' contention that limitations did not start running until they received actual notice that they did not acquire 100% of the minerals is foreclosed against them. Their contention was answered by this Court in *Stowe,* where it was said:

> The mistake at issue in *Brown* arose out of an ambiguous reservation of a royalty interest contained in the deed from Brown to Havard's immediate predecessor in title. The *Brown* court fairly summed up the rule enunciated by the above-cited authorities to be, that while the four-year statute of limitations ... is applicable to suits seeking reformation of instruments, the statute does not begin to run until the mistake is, or in the

exercise of reasonable diligence, should have been discovered. Such is unquestionably the rule in Texas.

However, none of the cases noted above ... involved a mistake which was clearly disclosed by an instrument in the grantees' chain of title. The recorded partition deed in this case was an essential link in Appellants' chain of title to the 290.85 acres. Because it was, Appellants were charged with constructive notice of the recitations, references, and exceptions contained in the partition deed. As held in *Wessels v. Rio Bravo Oil Co.*, 250 S.W.2d 668 (Tex.Civ. App.—Eastland 1952, writ ref'd), "a grantee is charged with constructive notice of each 'recital, reference and reservation contained in ... any instrument which forms an essential link in the chain of title under which [they claim].'" *Id.* 728 S.W.2d at 124.

The Hollands had access to information that the Deed Records of Wood County showed that minerals had been clearly and unambiguously reserved in the deed to each of their three grantors, and as purchasers of the land described in each of their three deeds (each covering a different tract of 33⅓ acres), they had constructive notice of all information contained in the chain of title of each of their grantors. They are thus bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in that chain. This matter is well established in Texas jurisprudence.[7]

The trial court properly held that Plaintiffs' cause of action for reformation of the deeds from Jarrell, Phillips and Barfield

was barred by the four-year statute of limitations.

## OWNERSHIP OF MINERALS

Following the execution of the deeds to the Hollands by J.H. Jarrell, Otha Jarrell Phillips and Edward Barfield in 1970, the minerals underlying the 100–acres were owned in the following fractional shares:

### Tract "A"

⅓ by the Hollands

⅓ by Edward Barfield

⅓ by Otha Jarrell Phillips

### Tract "B"

⅓ by the Hollands

⅓ by Edward Barfield

⅓ by J.H. Jarrell[8]

### Tract "C"

⅓ by the Hollands

⅓ by J.H. Jarrell

⅓ by Otha Jarrell Phillips

The minerals underlying the 100–acres were owned at the time of trial, as follows:

### Tract "A"

⅓ by the Hollands

⅓ by Edward Barfield

⅓ by James Dickey

### Tract "B"

⅓ by the Hollands

5/12 by Edward Barfield

1/12 by James Dickey

---

7. *Westland Oil Development Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903 (Tex.1982); *Mooney v. Harlin*, 622 S.W.2d 83 (Tex.1981); *Cooksey v. Sinder*, 682 S.W.2d 252 (Tex.1984); *Latimer v. Hess*, 183 S.W.2d 996 (Tex.Civ.App.—Texarkana 1944, writ ref'd); *NRC, Inc. v. Pickhardt*, 667 S.W.2d 292 (Tex.Comm'n App.—Texarkana 1984, writ ref'd n.r.e.); *Williams v. Harris County Houston Ship Channel Navigation District*, 128 Tex. 411, 99 S.W.2d 276 (Tex.1936); *Texas Co. v. Dunlap*, 41 S.W.2d 42 (Tex.Comm'n App.1926, judgm't adopted); *Tuggle v. Cooke*, 277 S.W.2d 729 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n.r.e.); *Abercrombie v. Bright*, 271 S.W.2d 734 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.); *Matthews v. Rains County*, 206 S.W.2d 852 (Tex.

Civ.App.—Amarillo 1947, writ ref'd); *Spencer v. Maverick*, 146 S.W.2d 819 (Tex.Civ.App.—San Antonio 1941, no writ); *City of Dallas v. Rutledge*, 258 S.W. 534 (Tex.Civ.App.—Dallas 1924, no writ).

8. J.H. Jarrell died on May 22, 1982, and his interests in the minerals passed under the laws of succession as follows: ½ to his wife Loura, ¼ to his sister Otha and ¼ to his nephew Edward. Otha Jarrell Phillips died testate on August 3, 1983, and her interests in the minerals were devised to her husband Troy, who died testate on February 5, 1985, and his interests in the minerals were devised to James Dickey.

⅙ by Loura Barfield [9]

### Tract "C"

⅓ by the Hollands
5⁄12 by James Dickey
1⁄12 by Edward Barfield
⅙ by Loura Barfield

## DISPOSITION OF THE APPEAL

The record shows that the trial court erred in granting summary judgment in favor of the Hollands, thereby holding that they were the owners of all the minerals on, in and under the three tracts of land described by metes and bounds in the judgment. Since the Defendants also filed a motion for summary judgment whereby they sought a declaration that they owned the minerals in accordance with the records of Wood County, which was denied, it becomes our duty to reverse and render judgment instead of reversing the judgment and remanding the cause to the trial court for trial. *See Hinojosa v. Edgerton,* 447 S.W.2d 670 (Tex.1969); *Money Placement Services v. Mercantile Bank,* 541 S.W.2d 230, 233 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ).

All points of error which have been brought forward by Defendants are sustained. The crosspoint presented by plaintiff is denied.

The judgment of the trial court is reversed and judgment is here rendered that Plaintiffs are the owners of an undivided one-third (⅓) interest in the minerals in, on and under the three tracts of land described my metes and bounds in the trial court's judgment, and that the remaining undivided two-thirds (⅓) interest in the minerals in, on and under said land is owned by Defendants as their interest appear in the records of Wood County, Texas.

REVERSED AND RENDERED.

9. Subject to Royalty Deed executed by Loura Barfield, as grantor, to Hemus, Inc., as grantee.